Granvel O. SMITH, Appellant,

v.

Charles H. CROCKETT et al., Appellees.

No. 624.

Court of Civil Appeals of Texas, Tyler.

Aug. 3, 1972.

Rehearing Denied Aug. 31, 1972.

Collie, McSpedden & Roberts, Walter M. Collie, Jr., Dallas, for appellant.

Palmer & Palmer, Philip I. Palmer, Jr., Dallas, for appellees Charles H. Crockett and Larry S. Parnass.

McKAY, Justice.

This is an appeal from a partially granted motion for judgment non obstante veredicto. Appellant, plaintiff in the trial court, brought this suit to recover damages for the alleged breach of an agreement on the part of appellees to sell him one-fourth of the total shares owned and to be acquired by appellees of the Irving Savings & Loan Association. In the alternative, appellant sued for damages arising from a breach of trust on the part of appellees and exemplary damages based thereon. The jury in response to special issues found for appellant, both on the making of the contract and the alleged breach of trust, and awarded exemplary damages in the amount of $25,000.00. Appellant thereupon moved for judgment on the jury verdict and appellees moved for judgment non obstante veredicto. The trial court partially granted appellees' motion for judgment non obstante and partially granted appellant's motion for judgment on the verdict and entered judgment for appellant only on the jury findings of breach of trust and exemplary damages, denying appellant recovery upon the jury's affirmative findings as to the making of the contract and the value of the stock at the time of breach. It is from the action of the trial court in granting the partial judgment non obstante veredicto and thereby disallowing damages under Special Issues Nos. 1 and 1A which inquired respectively as to the making of the contract in question and the value of the stock that appellant brings this appeal.

The revelant facts are that in the spring of 1968, the four appellees (Crockett, Parnass, Blaylock, Sr. and Blaylock, Jr.) acquired a sufficient number of shares of the capital stock of Irving Savings & Loan Association to give them effective voting control of the Savings & Loan Association. At that time Crockett, Parnass and the Blaylocks together each owned one-third of the total controlling shares. The four appellees entered into a "buy and sell" partnership agreement covering all of the shares owned by each individually. Acting on a decision to find an experienced manager for the association, one or more of the appellees contacted appellant who was

at that time chief executive officer of and a stockholder in Brenham Savings & Loan Association in Brenham, Texas. After conferences between them, an agreement was reached under which appellant became employed by Irving Savings & Loan Association as its executive vice-president and chief executive officer. This suit and resulting appeal is based upon appellant's claim that the appellees breached a portion of the agreement which induced him to accept employment with the association.

The alleged agreement upon which appellant seeks recovery is set out in his Plaintiff's Second Amended Petition as follows:

"Defendants would, at Plaintiff's option to be exercised by him at any time within five years, sell to Plaintiff, either from shares of stock already owned by them, or from presently owned shares and other shares which they would secure from third parties, a sufficient number of shares of Irving Savings and Loan Association to enable Plaintiff to own an equal number of such shares with each of them on a partnership basis with Defendants, Plaintiff to pay for such shares an amount equal to the Defendants' costs therein, plus interest paid by them from the date of their acquisition to date of purchase by Plaintiff. Stated another way, Plaintiff would be entitled to acquire 25 percent of the total number of shares owned by Defendants Crockett, Parnass and Blaylock(s), so that thereafter each party would own 25 percent of the total."

Alternative to his suit on the original agreement appellant also sued for conversion of certain stock arising out of another transaction and which is covered by a separate appeal.

Section 8.319 of the Texas Business & Commerce Code, V.A.T.C. provides:

"A contract for the sale of securities is not enforceable by way of action or defense unless

"(1) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

"(2) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

"(3) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under Subdivision (1) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

"(4) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

By way of defense to the cause of action alleged by appellant, the appellees plead the Statute of Frauds. Therefore, in order for appellant to recover on the alleged contract he must put himself under one of the four exceptions set out in Section 8.319 of the Texas Business & Commerce Code. After a thorough review of the record and the cases we have determined that appellant did not bring himself under any of the exceptions and accordingly the judgment of the trial court is affirmed for the reasons hereinafter enumerated.

■ Appellant by his argument concedes that Exception (3) is not here relevant and accordingly will not be discussed herein. Exception (1) of Section 8.319, Texas Business & Commerce Code as set out above requires that, "there is some writing signed by the party against whom enforcement is sought * * * sufficient to indi-

cate that a contract has been made for sale of a *stated quantity of described securities at a defined or stated price * * *.*" (Emphasis added). To sustain Exception (1) appellant points the court's attention to three writings, a letter from Appellee Parnass to appellant confirming appellant's employment by the Irving Savings and Loan, a work sheet of figures and an unaccepted settlement offer (the latter two coming in time well after appellant contends the agreement was made). The Parnass letter is significant because it purports to set out the employment terms and was sent immediately after the employment agreement was reached and is, in fact, the only writing between the parties which sets out the basis of the employment agreement. In Anderson's work on the Uniform Commercial Code in his commentary under Section 8.319, he states, at page 791, "(t)o be a sufficient writing under the statute of frauds relating to securities, the writing must indicate that (1) a contract has been made for sale, (2) of a stated quantity of described securities, (3) at a defined or stated price." And while the terms of the contract *other than the quantity of described securities and a defined or stated price,* need not be set forth in the writing and may be shown by parol evidence, the requirements of quantity and price must be satisfied by the writing itself. See Anderson, Uniform Commercial Code, Section 8.-319:10. An examination of the instrument which purports to set out the employment terms (the letter from Parnass to appellant) reveals that it wholly fails in meeting the above cited requirements. The only language in the letter dealing with a transfer of stock is as follows: "(i)n this connection, *we will work out* a most equitable stock arrangement in our new Association on a partnership basis as represented and agreed to in our last conference." (Emphasis added). We think it is obvious that the quoted sentence falls woefully short of being a written stock option contract. It states no price; it states no quantity; it states no time; it states no terms. We think this view is particularly strengthened

by the fact that this language is the only language dealing with stock transfer in a letter which did detail all of the other employment terms precisely.

Appellant also contends that he has satisfied the requirement of Exception two (2) of Section 8.319 (Tex.Bus. & Comm. Code) which reads, "delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment * * *."

■ At the time appellant accepted employment with the Irving Savings, the only substantial block of stock not owned by appellees was owned by Aubrey Roberts. Upon Roberts' death, appellant commenced negotiations with his widow which resulted in a written agreement with her for the purchase of the Roberts' stock. The consideration to be paid for the block of Roberts' stock was $302,625 which was borrowed by appellant and the appellees Crockett, Parnass and Blaylock, Jr., and a note for that amount was executed by appellant and the appellees to a bank. At or about the time of this transaction, appellant made known to appellees that he wished to exercise his option to acquire one-fourth of the total shares then owned and being acquired by them. A dispute arose concerning appellant's claim and the 809 shares then being acquired were purchased in the name of Blaylock, Jr., Trustee, and the stock was pledged to the bank by him as trustee. It is appellant's argument that by his signing the note and his demand that he be issued a certificate for 591 shares (one-fourth interest) that he had brought himself within Exception (2)—that by the signing of the note, "(p)laintiff had in fact paid for the one-quarter of the stock to which he was entitled under the contract made with him." We do not agree. Even if signing the bank note could be considered as payment within the meaning of Section 8.319, Exception 2, the payment was made to Roberts for stock belonging to Roberts. To fall within the exception, appellant would

have to show that he made payment to appellees who then kept his money while seeking to avoid delivery of the stock upon the grounds of the Statute of Frauds. To say that by signing a note to which he became jointly and severally liable but did not in fact pay when it became due, constituted payment for 591 shares by appellant is untenable. Appellant's action in signing the note was collateral to the alleged oral contract to transfer one-quarter interest to him and therefore not covered by the second exception.

Appellant further contends that he has met the requirement of Exception 4. Section 8.319(4) (Tex.Bus. & Comm.Code) reads, "(a) contract for the sale of securities is not enforceable by way of action or defense unless * * * * (4) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price." Our Supreme Court in Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W. 2d 415 (1960) has set out the requirements of a judicial admission in holding (1) that the declaration relied upon was made during the course of a judicial proceeding, (2) that the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony, (3) that the statement was deliberate, clear and unequivocal, (4) that giving of conclusive effect to the declaration will be consistent with public policy, and (5) that the testimony must be such as relates to a fact upon which a judgment for the opposing party may be based. We have carefully reviewed the testimony and have concluded that it falls short of constituting a judicial admission. Nowhere in the testimony do we find statements that meet the third requirement as set out in Griffin, supra, that is, that the "statement was *deliberate, clear and unequivocal.*" (Emphasis added). Even though the statements to which the appellant directs this court were made in the course of a judicial proceeding, we think such statements amount to no more than an admission, if even that, to an agreement based upon certain conditions precedent to agree in the future and no more.

For the reasons herein stated, judgment of the trial court is affirmed.