**John Crofford GRIMSLEY, Appellant,**

v.

**Patricia McLendon GRIMSLEY, Appellee.**

**No. 1927.**

Court of Appeals of Texas, Corpus Christi.

April 8, 1982.

Kenneth R. Hannam, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellant.

C. Gerard Miller, Corpus Christi, for appellee.

Before NYE, C. J., and YOUNG and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is a divorce case. After trial before the court, judgment was entered granting a divorce and awarding to wife-appellee title to a house that was purchased after the marriage with proceeds of the sale of property that wife claimed was given to her by her husband-appellant prior to the marriage. We reverse and render.

In August 1978, appellant and appellee met. On October 2, 1978, appellant proposed marriage which proposal was accepted by appellee on October 10, 1978. There-after on October 18, 1978, appellant wrote the following letter to appellee.

"Dear Pat and intended wife,

In appreciation of your past love and affection, your present love and affection, and your future love and affection I would be extremely happy to have you accept all of the items I have listed on my schedule of personal property enclosed with this letter which consists of all of my personal possession prior to our marriage so that in the event of my death all of this will belong to you for you to do with as you wish.

Thank you Pat for being my friend and future wife.

I love you,
John"

SCHEDULE OF PERSONAL PROPERTY

Stereo System: Panasonic AM–FM stereo
  Realistic turn table
  Pioneer reel to reel tape deck
  Akai 65–D cassette tape deck
  Craig 8-track tape deck
  Approximately 140 cassettes (recorded)
  Approximately 10 Magell reel to reel tapes recorded
  Approximately 50 Magell (90 minutes each side) blank tapes
  Approximately 50 blank 8-track tapes
  One stereo cabinet
  Numerous albums-approximately 100 (one hundred)
  Two Sterling speakers
  Two smaller speakers
One Mediterranean sofa & chair
Two end tables w/two ginger-jar lamps
One Motorola color T.V.
One etagere
One recliner
One breakfast nook w/chair
One pair of binoculars
One coffee table
2000 shares of Energy Surveys stock consisting of the following:
  ϟ1000 shares of S.I.I. stock

Savings account in Hub City Bank in the name of Energy Survey, account no. unknown

First mortgage on property on Breaux Bridge Highway, Lafayette, Louisiana payable $438x to Energy Surveys for 15 years

Energy Survey Funds in Hub City Bank and Trust Co. checking account no. 02–3637–3

1976 Chevrolet Caprice—Energy Survey is owed $2025 as of the date of this schedule."

One two (2) bedroom residence on Odile St., Lafayette, La., valued at $25,000—owe $10,000x

All monies in E.M.C.D. savings plan

All monies owing from Helmer Directional Drlg. profit sharing

All contents of safety deposit box including $250 worth of silver coins"

No deed or formal transfers of the real estate or stock were ever effected.

The parties were married on November 18, 1978. This was a second marriage for both of them. At the time of the marriage, appellant was 50 years old and besides being the sole owner of Energy Surveys Co., he was an employee of a drilling company. Appellee was a 39-year-old school teacher with a Master's Degree who also was a part-time real estate salesperson. After the marriage, appellant moved into the rent house appellee was living in with her two little boys from the prior marriage.

Approximately three or four months after the marriage, the parties purchased a home in Corpus Christi Country Club Estates for Ninety Thousand Dollars ($90,000.00). They made a down payment of Sixty Two Thousand One Hundred Forty Seven and 94/100 Dollars ($62,147.94) and assumed a loan for the balance. The money for the down payment was traced, and it was undisputed that this consideration came from the sale of the property appellant owned before the marriage to wit:

(1) Twenty Thousand Dollars ($20,000.00) cash from Energy Surveys Inc. savings account.

(2) Thirty Thousand Dollars ($30,000.00) cash transferred from Energy Surveys Inc. to appellant following a loan to Energy Surveys Inc. of Thirty Thousand Dollars ($30,000.00) by Citizens State Bank in Corpus Christi. The collateral for the Thirty Thousand Dollars ($30,000.00) loan was One Thousand (1,000) shares of Smith International Industries stock which appellant owned.

(3) Thirteen Thousand Five Hundred and 08/100 Dollars ($13,500.08) cash which is the net proceeds from the sale of appellant's house in Louisiana.

All of these sums were deposited by appellant into a joint checking account at the Citizens State Bank in Corpus Christi during the month of February 1979. All of these transfers were made by appellant. At the time of the transfers, appellee had no authority or ability to transfer or encumber these funds nor to sell or convey appellant's property in Louisiana. Appellee wrote the check on the parties' joint checking account which made the down payment for the Country Club Estates house. However, both appellant and appellee were named grantees to the deed on said house.

After the purchase of the house, the parties started having marital problems. Appellant moved out. There was a brief reconciliation but again appellant moved out and the case was tried within twenty four months from the wedding date. During the marriage, the parties actually lived together not more than ten months and only seven months in the Country Club Estates home. The court divided the property as follows: appellee was awarded as her sole and separate property the home on Country Club Estates, all escrow funds held by the mortgage company for payment of insurance, taxes and maintenance charges on the home and her community interest in the house; a property located at 717 Ponder Street, all oil and gas mineral interest owned by her or in her name and the following items of personal property; all household furnishings, appliances, fixtures, wearing apparel, jewelry and other personal property in her

possession or subject to her control, all sums of cash in her possession or in her control including Nine Thousand Dollars ($9,000.00) in the Teacher's Credit Union, all life insurance policies and retirement benefits arising out of her employment, a 1978 Cadillac automobile and a 1977 Oldsmobile Cutlass.

Appellant was awarded all household furnishings, appliances, fixtures, wearing apparel, jewelry and other personal property in his possession or subject to his control including but not limited to Two Thousand Four Hundred (2,400) shares of Energy Surveys stock, a 1978 Chevrolet automobile, two individual retirement accounts, all policies of life insurance insuring his life and all pensions, retirement benefits and other benefits arising out of his employment, a power table saw, a Bulova quartz watch, a crystal candy dish and one Jefferson and buffalo nickel coin collection and a lawnmower. Appellant was also ordered to pay a Fifty Thousand Dollar ($50,000.00) promissory note signed individually to Energy Surveys Inc. and a One Thousand Five Hundred Dollar ($1,500.00) note to Citizens State Bank.

The trial court filed findings of fact[1] and conclusions of law[2] and we also have a complete statement of facts containing all oral and written testimony introduced in the trial.

Appellant, in twelve points of error, contends that the trial court committed error in finding a gift of all of his personal property prior to the marriage because there was no evidence of a gift and there was also insufficient evidence or such finding is against the great weight and preponderance of the evidence.

1. We summarize the findings: (1) That appellee received into her possession the listed property as a "gift" on October 11 through October 31, 1978. (2) That the property listed was placed into her possession except a 1976 Caprice and some items of furniture. (3) That no children were born to the marriage.

2. Summary of conclusions of law: (1) That appellant made a gift of the property listed in the schedule prior to the marriage. (2) That the intent for a present gift is found in the letter. (3) That appellee accepted the gift. (4)

Since the findings of fact regarding delivery filed by the trial court are without support in the evidence, we will pass upon appellant's points of error without regard thereto. See, *Block v. Waters*, 564 S.W.2d 113, 115 (Tex.Civ.App.—Beaumont 1978, writ ref'd).

The character of title to property as to whether it is separate or community property is generally determined as of the date it is vested. Spears, Marital Rights in Texas, § 392 (4th Ed. 1961). The question then is whether appellant made a gift of all of his assets to appellee before the marriage, thus making the down payment come from her separate property and giving her a separate interest in the home at the time it was purchased.

■ The well-established rule of law regarding gifts is that three elements are necessary to establish the existence of a gift: They are: (1) intent to make a gift; (2) delivery of the property, and (3) acceptance of the property. *M. T. Harrington v. Bailey*, 351 S.W.2d 946 (Tex.Civ.App.—Waco 1961); *Sumaruk v. Todd*, 560 S.W.2d 141, 146 (Tex.Civ.App.—Tyler 1977, no writ). One who is claiming the gift has the burden of proof.

Delivery of the property should be such that all dominion and control over the property is released by the owner. The rule has been stated as follows:

"Among the indispensible conditions of the valid gift and the intention of the donor to absolutely and irrevocably divest himself of the title, dominion and control of the subject of the gift and the praesenti *at the very time he undertakes to make the gift*;

That delivery was actual "for some property, and constructive and symbolic for other property." (5) That property on the schedule was a completed gift prior to the marriage and was therefore her separate property when the parties were married. (6) That the proceeds of the gift were used by appellee to purchase the home after the marriage. (7) That any community interest which may have inured to appellant's benefit in the home was offset by the division of other property that was awarded to appellant.

The irrevocable transfer of the present title, dominion, and control of the thing given to the donee, so that the donor can exercise no further act of the dominion or control over it.

A mere intention to make a gift, however clearly expressed, which has not been carried into effect, amounts to nothing, and enforces no rights in the subject matter of the proposed gift upon the intended donee. The intention must be effective by complete and unconditional delivery." *Harmon v. Schmitz*, 39 S.W.2d 587, 589 (Tex.Com.App.—1931). (emphasis added)

Since there were no documents to indicate a formal transfer, endorsement or assignment of the property listed on the schedule, the only evidence of a gift prior to the marriage is the letter and the conduct of the parties as shown in the evidence. Appellee tried the case on the theory that all of the items listed on the schedule attached to the letter were given to her by appellant prior to the marriage. Appellant, on the other hand, denied the making of the gift and contended that the letter was a will. The court found for appellee, finding that the letter expressed an intent to make the gift, that appellee accepted the gift and that the delivery was constructive or symbolic. We disagree that there was delivery of the house in Louisiana, the Energy Surveys Inc. assets and the S.I.I. stock.

## HOUSE IN LOUISIANA

There are two ways to make a gift of real estate. One is by deed, and the other is a parole gift of realty when certain conditions are met.

"A parole gift of realty is enforceable in equity if there is established, (1) a gift in praesenti, (2) possession under the gift by the donee with the donor's consent and (3) permanent invaluable improvement made on the property by donee with donor's knowledge or consent or without improvements, the existence of such facts as would make it a fraud upon the donee not to enforce the gift." *Moody v. Ireland*, 456 S.W. 494, 496 (Tex.Civ.App.— Waco 1970, writ ref'd n. r. e.).

In the case at bar, appellee did not receive a deed for the house. The evidence shows that she saw the house one time. There is no evidence that she made valuable improvements thereon or spent any time at the house. The evidence is conclusive that appellee did not relinquish dominion and control over the house. To the contrary, when the house was sold after the marriage, it was appellant who signed the deed as grantor. Approximately Fourteen Thousand Two Hundred Sixty Eight Dollars ($14,268.00) was obtained from the sale of this house and eventually used to make a down payment on the Country Club Estates house. This represents a separate interest in the house to appellee, and the trial court was in error in finding to the contrary.

## ENERGY SURVEYS, INC.

At the time appellant wrote the letter to appellee, he was the sole owner and stockholder of Energy Surveys, Inc. The assets of said corporation consisted primarily of:

(1) Twenty Thousand Dollars ($20,000.00) in cash in deposit in the Energy Surveys, Inc., savings account in a bank in Louisiana.

(2) One Thousand (1,000) shares of stock in Smith International Industries. (The stock was issued to Energy Surveys, Inc., and had a value of approximately Forty Thousand Dollars [$40,000.00]).

(3) A Thirty Eight Thousand Dollar ($38,000.00) promissory note held by Energy Surveys Inc. from the sale of the building to a Mr. Rice.

It was appellee's contention that appellant made a gift of all of these assets to her as per the letter of October 18, 1978. We will review each of these assets with the regards to the element of delivery.

## (1) $20,000 ENERGY SURVEYS, INC., SAVINGS ACCOUNT

The evidence shows that appellee never saw or had possession of the original Energy Surveys, Inc., stock certificates.

Appellant testified that he had them in his possession at the time of the trial. The Twenty Thousand Dollar ($20,000.00) cash that Energy Surveys, Inc., had in a savings account was withdrawn by appellant in February 1979, almost three months after the alleged gift. This money was deposited in a joint checking account of the parties and eventually made part of the consideration for the Country Club Estates house.

Appellant also had possession of the savings account passbook. Prior to the money being withdrawn by appellant, he did not change or transfer the account into appellee's name. The evidence is conclusive that there was no total relinquishment of control over the Twenty Thousand Dollars ($20,000.00) prior to the marriage. Therefore, there was no gift and these funds represent appellant's separate property interest in the Country Club Estates house, and it was error for the trial court to hold to the contrary.

### (2) S.I.I. STOCK

■ Appellee claimed that appellant, via the letter, made a gift to her of One Thousand (1,000) shares of a Smith International Industry stock that was owned by appellant's company. She claims that this gift was also made before the marriage.

The law on the gift of stock is clearly stated in the case of *Carrington v. Commissioner of Internal Revenue*, 476 F.2d 704, 709 (Court of Appeals—5th Circuit—1973). In that case, the Fifth Circuit said "a gift of stock between competent parties requires donative intent, actual delivery, and relinquishment of dominion and control by the donor."

A review of the evidence shows that this stock was never endorsed over to appellee nor did appellant ever relinquish total dominion and control over such stock to appellee. In February 1979, appellant used this stock as collateral for a Thirty Thousand Dollar ($30,000.00) loan to Energy Surveys, Inc., which is evidenced by a promissory note to the bank which appellant signed as president of the corporation. The Thirty Thousand Dollars ($30,000.00) was then transferred by appellant into the joint checking account of the parties and used as part of the down payment on the house. Since appellant never relinquished total dominion and control of stock to appellee prior to the marriage, the stock was and is appellant's separate property.[3] Therefore, appellant's use of the Thirty Thousand Dollars ($30,000.00) to help make the down payment on the Country Club Estates house represents a separate property interest in said house, and it was error for the court to find to the contrary.

In summary, appellant's no-evidence points are sustained. There is no evidence to support a gift of any of the assets that were liquidated after the marriage and used to make the down payment on the Country Club Estates house. Appellant is therefore entitled to a separate property interest in that house to the extent he used his separate property funds for the down payment. *Gleich v. Bongio*, 128 Tex. 606, 99 S.W.2d 881 (Tex.Com.App.1973); *Bell v. Bell*, 593 S.W.2d 424 (Tex.Civ.App.—Houston (14th Dist.) 1980 n. w. h.). Since appellant provided 69% of the purchase price of said house with separate property funds, he is hereby awarded a 69% separate property interest in said house. The balance (31%) is owned by appellant and appellee as tenants in common.

The judgment of the trial court is reversed and rendered in accordance with this opinion.

---

3. Some time later the S.I.I. stock was sold by a stockbroker, the loan to Citizens Bank was paid off, and the net proceeds were deposited in the joint checking account of the parties.