CONSOLIDATED PETROLEUM INDUS-
TRIES, INC. et al., Appellants,

v.

John R. JACOBS, Appellee.

No. 11–82–068–CV.

Court of Appeals of Texas,
Eastland.

Feb. 24, 1983.

Rehearing Denied April 7, 1983.

Rufus Wallingford, Murray Fogler, Ful-
bright & Jaworski, Houston, Charles Scar-
borough, Scarborough, Black, Tarpley &
Scarborough, Abilene, for appellants.

Frank Jennings, Jennings, Dies & Turner,
Graham, for appellee.

DICKENSON, Justice.

The principal issue on appeal is whether
the Statute of Frauds [1] requires us to re-

1. The applicable Statute of Frauds, Tex.Bus. &
Com.Code sec. 8.319 (Vernon 1968), states: A
contract for the sale of securities is not en-
forceable by way of action or defense unless

(1) there is some writing signed by the party
against whom enforcement is sought or by his
authorized agent or broker sufficient to indi-
cate that a contract has been made for sale of a

stated quantity of described securities at a
defined or stated price; or

(2) delivery of the security has been accepted
or payment has been made but the contract is
enforceable under this provision only to the
extent of such delivery or payment; or

(3) within a reasonable time a writing in con-
firmation of the sale or purchase and sufficient
against the sender under Subdivision (1) has

verse a judgment for damages resulting from nonperformance of an oral contract for the sale of stock.

The jury answered all issues in favor of plaintiff, John R. Jacobs,[2] and judgment was rendered in his favor against defendants, Consolidated Petroleum Industries, Inc., D. Truitt Davis and Jack W. Young for the sum of $2,095,000.00 plus attorney fees.[3] Defendants appeal. We reverse and render.

The issues submitted to the jury, and the jury's answers, are quoted in full:

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that before June, 1979, Davis and Young and Jacobs agreed to an oral contract as follows:

(1) Jacobs would surrender and transfer all of his shares of stock in Old Falcon to Falcon-Delaware, Inc., and all of his shares of stock in Dunnam and his interest in DTS Leasing Company to CPI Oil Services, Inc.; and

(2) Davis and Young would transfer to Jacobs 100,000 shares of stock in CPI; and

(3) Jacobs would receive cash in the amount of $87,239.68 and a promissory note in the principal amount of $574,-531.82 from Falcon-Delaware, Inc. and cash in the amounts of $7,111.45 and $1,162.00 and a promissory note in the principal amount of $42,668.65 from CPI Oil Services, Inc.; and

(4) Jacobs would pay cash in the total amount of $65,000.00 and execute promissory notes in the total principal amount of $435,000.00 to Davis and Young; and

(5) Each of such promissory notes would provide for interest at the rate of

ten percent (10) per annum and be payable in ten (10) equal semi-annual installments?

ANSWER: Yes

You are instructed that for a contract to exist there must be a meeting of the minds between the parties to the contract on the subject matter of the agreement, and all of its essential terms.

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that from the time he surrendered and transferred his shares of stock in Old Falcon and Dunnam and his interest in DTS Leasing Company until this suit was filed, Jacobs was ready, willing, and able to perform the oral contract inquired about in Special Issue No. 1?

ANSWER: Yes

## SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that before or at the time Jacobs surrendered and transferred his shares of stock in Old Falcon and Dunnam, Davis and Young promised to Jacobs that they would sign a contract that had been or would be prepared providing for the transfer of 100,000 shares of stock in CPI to Jacobs in accordance with the oral contract inquired about in Special Issue No. 1?

ANSWER: Yes

## SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that it was reasonably foreseeable to Davis and Young that Jacobs would rely upon the promises inquired about in Special Issue No. 3?

---

been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

(4) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.

**2.** The suit was originally filed by Consolidated Petroleum Industries, Inc., Falcon Drilling Company, D. Truitt Davis and Jack W. Young on March 3, 1980. After they dismissed their lawsuit, the parties were realigned.

**3.** The trial court's judgment was signed on February 4, 1982.

ANSWER: <u>Yes</u>

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that in surrendering and transferring his shares in Old Falcon and Dunnam, Jacobs relied upon the promises of Davis and Young that they would sign the contract inquired about in Special Issue No. 3?

ANSWER: <u>Yes</u>

## SPECIAL ISSUE NO. 5–A

Do you find from a preponderance of the evidence that such reliance resulted in a detriment to Jacobs?

ANSWER: <u>Yes</u>

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that CPI, through one or more of its directors, other than Davis and Young, knew of the oral contract between Davis and Young and Jacobs inquired about in Special Issue No. 1?

ANSWER: <u>Yes</u>

## SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that CPI, acting through its Board of Directors, interferred with the performance by Davis and Young of the oral contract with Jacobs inquired about in Special Issue No. 1?

ANSWER: <u>Yes</u>

## SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that such interference on the part of CPI, acting through its Board of Directors, was willful and intentional?

ANSWER: <u>Yes</u>

## SPECIAL ISSUE NO. 9

Do you find from a preponderance of the evidence that such interference on the part of CPI, acting through its Board of Directors, was a proximate cause of Davis and Young not performing the oral contract with Jacobs inquired about in Special Issue No. 1?

ANSWER: <u>Yes</u>

## SPECIAL ISSUE NO. 10

What do you find from a preponderance of the evidence would have been the market value of 100,000 shares of stock in CPI on or about March 1, 1980 had such shares been transferred to Jacobs?

ANSWER: <u>$2,500,000.00</u>

## SPECIAL ISSUE NO. 11

What do you find from a preponderance of the evidence would have been the market value, on or about March 1, 1980, of the two promissory notes to be executed by Jacobs payable to Davis and Young in the total principal amount of $435,000.00 under the oral contract inquired about in Special Issue No. 1?

ANSWER: <u>$380,000.00</u>

## SPECIAL ISSUE NO. 12

What do you find from a preponderance of the evidence would be a reasonable fee for the services of an attorney representing Jacobs in preparing for and trying this case in this Court?

ANSWER: <u>$40,000.00</u>

## SPECIAL ISSUE NO. 13

What do you find from a preponderance of the evidence would be a reasonable fee for the services of an attorney for representing Jacobs in the Court of Civil Appeals if there is an appeal of this case to such Court?

ANSWER: <u>$6,000.00</u>

## SPECIAL ISSUE NO. 14

What do you find from a preponderance of the evidence would be a reasonable fee for the services of an attorney for representing Jacobs in the Texas Supreme Court if there is an appeal of this case to such Court?

ANSWER: <u>$4,000.00</u>

Appellants have briefed seven points of error. We will assume, without deciding, that Special Issue Number 1 was properly submitted and that there is evidence which is legally and factually sufficient to support the jury's answer.[4] Even so, we must sustain appellant's first point of error which states:

> The trial court erred in overruling the motions of the defendants, Davis and Young, for instructed verdict and judgment notwithstanding the verdict, and in entering judgment because, as a matter of law, the alleged oral agreement was unenforceable under the applicable statute of frauds, and Jacobs failed to establish any exception either by partial performance or promissory estoppel to the application of the statute.

 Appellee argues that the oral agreement found in answer to Special Issue Number 1 "was entered into for the purpose of achieving a corporate reorganization" and that it did not constitute a "sale of securities" within the meaning of section 8.319, supra. We hold that even though the oral agreement dealt with the corporate reorganization of several corporations in which Davis and Young owned stock, the agreement contemplated a "sale of securities" within the meaning of section 8.319, supra.[5] The agreement found by the jury shows clearly that it dealt with: (1) the sale of Jacobs' stock in Falcon Drilling Company[6] to Falcon-Delaware, Inc.; (2) the sale of Jacobs' stock in Dunnam Tool & Supply, Inc. to CPI Oil Services, Inc.; and (3) the sale from Davis and Young to Jacobs of 100,000 shares of stock in Consolidated Petroleum Industries, Inc. That agreement shows the amount of cash and promissory notes for each of the sales. The first two sales were reduced to writing and completed. The third sale of securities was never reduced to writing, and it is barred by the express language of Section 8.319, supra, unless one of the statutory exceptions or the doctrine of promissory estoppel is applicable.

The first statutory exception does not apply because there is no writing signed by Davis and Young "sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price." See section 8.319(1), supra.

The second statutory exception is not applicable because Jacobs has neither paid the $65,000 cash nor signed notes totalling $435,000. The fact that Jacobs completed the sales of his Falcon stock and his Dunnam stock does not constitute "delivery or payment" as to the stock which Davis and Young orally contracted to transfer to Jacobs. See section 8.319(2), supra.

The third exception is not urged.

The fourth exception, which is strongly argued by appellee, provides that the oral contract for the sale of securities can be enforced if:

> the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price. (Emphasis added)

Davis and Young each testified in court, admitting they had discussed with Jacobs his acquisition of 100,000 shares of stock in Consolidated Petroleum Industries, Inc. and that they had discussed a price of $5.00 per share; however, each of them denied that

---

4. Consequently, we need not discuss points of error 3 and 4 which challenge the form of submission and the legal and factual sufficiency of the evidence to support the answer to this issue. Also, we need not discuss points of error 2, 5 and 7 in view of our holdings on the two points of error which are discussed.

5. Jacobs' handwritten memorandum of the conversation with Young showing the terms of the transaction contains the notation: "CPI Stock Sale."

6. Jacobs was President of Falcon Drilling Company and its successor, Falcon-Delaware, Inc. Falcon-Delaware, Inc. and CPI Oil Services, Inc. were wholly owned subsidiaries of Consolidated Petroleum Industries, Inc. The litigation developed after Jacobs' employment was terminated by Davis and Young, who were the chairman and the President of Consolidated Petroleum Industries, Inc.

such a contract was made. Each of them claimed that all of the essential terms were not agreed upon. We are unable to hold that Davis and Young admitted in their "pleadings, testimony or otherwise in court" that an oral contract was made. They refused to admit an agreement that Jacobs could pay the bulk of the purchase price as he received the proceeds from the notes to him for the Falcon Stock and the Dunnam stock. The closest they came was to admitting discussions of 100,000 shares at $5.00 per share. This is not enough. See section 8.319(4), supra.

■ We must also hold that the doctrine of promissory estoppel does not apply to the facts of this case. In order to invoke this doctrine, Jacobs would have to have proved an oral promise to sign and deliver a written contract which would comply with the Statute of Frauds. *Nagle v. Nagle,* 633 S.W.2d 796 at 800 (Tex.1982); *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 at 940 (Tex.1972); *Kenney v. Porter,* 604 S.W.2d 297 at 303 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Boddy v. Gray,* 497 S.W.2d 600 at 603 (Tex. Civ.App.—Amarillo 1973, writ ref'd). There is no proof that Davis and Young orally promised to sign a written contract, which had been prepared and which would satisfy the requirements of the Statute of Frauds, at the time Jacobs sold his Falcon stock and his Dunnam stock; consequently, the doctrine of promissory estoppel is not applicable.

The sixth point of error claims:

The trial court erred in overruling CPI's motions for instructed verdict and judgment notwithstanding the verdict, and in entering judgment on the verdict because:

(a) The evidence is legally (or alternatively, factually) insufficient to show that CPI tortiously interfered with the performance of any alleged oral agreement between the individual parties;

(b) A wholly owned subsidiary of CPI was a party to the oral contract as found by the jury, and the subject matter of the agreement was CPI stock, thereby giving CPI such an interest in the contract as to prohibit it from being guilty of tortious interference; and

(c) The evidence conclusively demonstrates that any oral agreement between Jacobs and Davis and Young had been repudiated prior to the events which Jacobs says constituted tortious interference by CPI with the alleged oral agreement.

We sustain this point of error.

■ We recognize the rule stated in *Clements v. Withers,* 437 S.W.2d 818 (Tex. 1969), that the unenforceability of a contract as between the parties is no defense to a third party in an action for tortious interference with its performance. Consolidated Petroleum Industries, Inc. was not a "third party" within the meaning of *Clements v. Withers,* supra.

Our Supreme Court pointed out in *Black Lake Pipe Line Company v. Union Construction Company, Inc.,* 538 S.W.2d 80 (Tex.1976):

An important element in a right of recovery for contract interference is that the interference must be without right or justification. Interference with contractual relations is privileged where it results from the exercise of a party's own rights or where the party possesses an equal or superior interest to that of the plaintiff in the subject matter.

See also *Maxey v. Citizens National Bank of Lubbock,* 507 S.W.2d 722 (Tex.1974); *Speer v. Continental Oil Company,* 586 S.W.2d 193 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.); *Terry v. Zachry,* 272 S.W.2d 157 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.).

It is clear that Consolidated Petroleum Industries, Inc. had an interest in the transaction sufficient to protect it from liability for tortious interference with an unenforceable oral contract involving its stock, its principal stockholders, the Chairman of its Board of Directors, and its President.

The judgment of the trial court is reversed, and we render judgment that John R. Jacobs take nothing.