**John P. GANNON, Appellant,**

v.

**John H. BAKER, III, Appellee.**

**No. 01–89–00531–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 30, 1992.

Rehearing Denied May 28, 1992.

John Roberson, Gregory N. Jones, Houston, for appellant.

Thomas R. McDade, W. Wendell Hall, Lee A. Hunnell, Ronald J. Palmer, Houston, for appellee.

Before SAM BASS, DUNN and O'CONNOR, JJ.

## OPINION ON REMAND FROM THE TEXAS SUPREME COURT

SAM BASS, Justice.

This case is before this Court on remand from the Texas Supreme Court. John P. Gannon appealed from a partial summary judgment and a later bench trial order dismissing Gannon's remaining claims against John H. Baker, III. This Court affirmed in part and reversed and remanded in part, holding that the trial court did not err in granting the partial summary judgment with respect to an alleged oral stock leveling agreement. More specifically, this Court found that the minutes of a corporate meeting constitute a written agreement of persons present; thus, evidence of the leveling agreement is barred by the parol evidence rule. *Gannon v. Baker,* 807 S.W.2d 793, 800 (Tex.App.—Houston [1st Dist.] 1991) (aff'd in part and rev'd in part).

The supreme court reversed the portion of judgment concerning the leveling agree-

ment, holding that the parol evidence rule does not bar evidence of the agreement. *Gannon v. Baker,* 818 S.W.2d 754, 756 (Tex.1991). The court then remanded for this Court to consider the remaining arguments asserted in Baker's motion for summary judgment concerning the alleged oral leveling agreement.

We affirm the partial summary judgment of the trial court.

Gannon was a 50 percent owner of a partnership that operated an outdoor sign business, J & B Sign Company. In 1976, in an effort to obtain capitalization, the partners, Bill Nail and Gannon, agreed to bring in Baker as an owner. Baker and his lawyer suggested that the partnership be incorporated, and that Baker be given 60 percent of the stock, with 20 percent each to Gannon and Nail. In addition, the parties entered into a trust agreement, whereby Baker would be entitled to vote Gannon's and Nail's shares of stock, "for so long a time as the corporation shall be obligated on any note, guaranty, or other obligation of whatsoever kind or nature that requires the individual guaranty, legally or otherwise of any of the parties hereto or the endorsement or guaranty of any person, firm or company of the parties hereto." Baker promised to act in good faith when voting those shares.

Gannon and Nail instituted suit against Baker in 1983, alleging that they had agreed to the unequal stock distribution, in exchange for Baker's oral promise to "level" stock ownership when the trust agreement terminated. They contended that Baker had influenced creditors to continue requiring Baker's personal guarantee on corporate debts, even though the corporation was financially stable enough that a personal guarantee was unnecessary. The petition further alleged that Baker had refused to place the oral agreement in writing, as he had originally promised he would do.

While suit was pending, on December 30, 1986, J & B Sign Company sold its assets to Outdoor Systems, Inc. Before that, on December 2, 1986, notice was sent to Gannon that a special meeting of the J & B shareholders would be held to consider the sale of substantially all the assets of J & B Sign Company. The proposed sale was in the amount of $8,000,000. Gannon formally exercised his dissenting shareholder's rights of appraisal, arguing that the fair market value of the company was $11,000,000, and that under the oral leveling agreement he owned 50 percent of the stock. Nail had already sold his ownership interest to Baker by this time.

Accordingly, Gannon wanted the corporation to pay him $5,500,000 for his 50 percent ownership interest obtained through the leveling agreement, and an additional $500,000 in dividends. Baker responded, as chairman of J & B, by stating that the fair value of Gannon's shares was $578,000.

Baker and J & B filed a motion to appoint an appraiser to determine the fair value of the stock and a motion for summary judgment. Among other allegations in the motion for summary judgment, Baker and J & B asserted that the oral leveling agreement was invalid, because it violated the parol evidence rule and the Statute of Frauds, and because Gannon had neither established the existence of consideration nor met the elements of a binding gift. The court granted partial summary judgment in favor of Baker and J & B regarding the oral leveling agreement.

The trial court also ordered that appraisers be appointed to determine the market value of J & B. Gannon objected to the appointment of appraisers, because he stated that it was undisputed that the assets were sold for $8,000,000. Gannon wanted a jury to "resolve the issues pertaining to conversion, breach of fiduciary duty, fraud, usurpation of corporate opportunity and breach of contract." The trial court directed the appraisers to determine the value as of the day before the shareholders approved the sale of substantially all the assets.

The appraisers concluded that the company's fair market value as of December 14, 1986, was $2,397,324. Gannon's 20 percent share of that amount was $479,465, and the appraisers recommended that the stock be discounted by 35 percent, due to its minori-

ty position and lack of marketability, to a fair market value of $311,652. The judgment awarded $479,464.08 to Gannon, "such sum being the fair value of Plaintiff's share of stock ... as determined solely by the appraisal report." The trial court also awarded prejudgment interest of 10 percent per annum and costs to Gannon, and then denied all relief not expressly granted.

The supreme court has remanded this cause for this Court to address Baker's remaining summary judgment arguments concerning the oral leveling agreement. Those arguments are: (1) that the terms of the oral agreement were indefinite and thus were unenforceable as a matter of law; (2) that the Statute of Frauds requires a writing to enforce a contract for the sale of securities; and (3) that a "gift" cannot be enforced.

 In reviewing the granting of a motion for summary judgment, we accept as true all evidence in favor of Gannon, grant him every reasonable inference, and resolve any doubts in his favor. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex. 1987). The movant has the burden of showing that there are no issues of material fact, and that he is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). When a summary judgment order does not state the specific grounds upon which it was granted, as here, a party appealing from such order must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

Baker asserts in his motion for summary judgment that the terms of the agreement are indefinite; thus, the agreement is unenforceable as a matter of law. The promise Gannon attempts to enforce is found in his sixth, seventh, and eighth amended petitions:

At or near the time the Company was organized, Defendant Baker orally represented, promised and/or agreed to "level" or equalize the ownership of the stock of the Company among the ownership of the shareholders upon termination of the Trust Agreement. That is, Defendant Baker represented, promised and/or agreed to convey to Plaintiff and any other shareholder of the Company a sufficient number of shares so as to result in an equal ownership of the total amount of outstanding shares among each of the shareholders. In return, Plaintiff agreed to contribute to the Company all of his interest in J & B Sign Company, a partnership owned equally by Plaintiff and William Nail, and further agreed to devote his time, energy and efforts to the business of the Company.

 It is well established that the terms of an oral contract must be clear, certain, and definite. *Haden Co. v. Riggs*, 84 S.W.2d 789, 798 (Tex.Civ.App.—Galveston 1935), *aff'd*, 127 Tex. 314, 94 S.W.2d 152 (1936). If an alleged agreement is so indefinite that it is impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. *Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *University Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ). A lack of definiteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered or the property to be transferred. *University Nat'l Bank*, 773 S.W.2d at 710 With respect to an oral agreement to transfer stock, terms must state the specific quantity of shares and the specific price in order to be considered "clear, certain, and definite." *Consolidated Petroleum Indus. v. Jacobs*, 648 S.W.2d 363, 366 (Tex.App.—Eastland 1983, writ ref'd n.r.e.).

 The problems arising in the facts of this case indicate that the terms of the agreement are not "clear, certain, and definite." Originally, J & B had three shareholders—Baker, Gannon, and Nail. Thus, an equalization of stock among the shareholders would require Baker to transfer 13.33 percent of his stock to Gannon and 13.33 percent to Nail, making each of them

one-third owners. Gannon's first three pleadings indicate that this is the division he thought had been agreed upon. However, after Nail sold his shares to Baker, Gannon interpreted the agreement to mean that he and Baker each were to own one-half of J & B. If the parties, in making their agreement, had specified a particular date or event when the stockholders would have been counted for purposes of leveling, this problem would not have arisen. However, they did not make any agreement to this effect.

Further, the agreement does not place any restrictions on sale, nor does it specify whether the leveling interest is sold with the stock. Thus, any shareholder is free to sell any or all of his stock to one or more individuals. When he does so, he may or may not be selling his leveling interest in the stock as well. Thus, we are unable to conclude with any certainty the quantity of shares the parties intended to transfer. The agreement is therefore unenforceable, due to its lack of "clear, certain, and definite" terms.

Baker next asserts in his motion for summary judgment that the oral agreement is unenforceable, because the Statute of Frauds requires a writing to enforce a contract for the sale of securities. To the contrary, Gannon claims that this agreement is not a contract for the sale of securities, but is merely an agreement relating to the allocation of shares of stock.

■■■ Stock of a closely held corporation is a security subject to the provisions of the Texas Business and Commerce Code. *Kenney v. Porter*, 604 S.W.2d 297, 302 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). The Statute of Frauds provides that a contract for the sale of securities is not enforceable unless "there is some writing signed by the party against whom enforcement is sought ... sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price. ..." TEX.BUS. & COM.CODE ANN. § 8.319 (Vernon 1991). The requirements of quantity and price must be satisfied by a writing. *Smith v. Crockett*, 485 S.W.2d 317, 320 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.).

■■ Gannon claims that the transfer was not a sale, because it was to be made at no additional cost. However, Gannon asserts in his pleadings that the stock was to be conveyed *in return* for Gannon's interest in J & B Sign Company and for his devotion of time, energy, and efforts. Thus, his pleadings allege the existence of consideration. Accepting that allegation as true, we should find that this is a sale of stock.

The Statute of Frauds requires a writing specifying quantity and price for an agreement involving the sale of stock. Because there was no such writing here, the agreement is unenforceable.

Finally, Baker argues that Gannon attempts to escape the necessity of a writing by claiming that the shares were to be given to him. Baker relies upon Gannon's response to the motion for summary judgment, which states, "Baker was to distribute shares to Plaintiff and Mr. Nail, at no cost to them...."

■■ For a court to find the existence of a gift, there must be proof of donative intent, delivery, and acceptance. *Grimsley v. Grimsley*, 632 S.W.2d 174, 177 (Tex.Civ.App.—Corpus Christi 1982, no writ). A gift of stock further requires that there be relinquishment of dominion and control by the owner. *Carrington v. Commissioner*, 476 F.2d 704, 709 (5th Cir.1973).

■■ The essence of Gannon's case is that Baker has refused to relinquish dominion and control over the stock, that he has not delivered it, and that he has no donative intent. Not only does Gannon fail to prove the elements necessary for the court to find that Baker had agreed to "give" him the stock, he argues exactly the opposite.

Gannon has not sufficiently shown that each of the independent arguments alleged in the motion is insufficient to support the order. In fact, all of these arguments support the trial court's order of partial summary judgment.

The partial summary judgment of the trial court is affirmed.

O'CONNOR, Justice, dissenting.

I dissent. The majority holds that the leveling agreement is not sufficiently definite to be enforceable.

Both parties agree that they had an oral leveling agreement. At his deposition, Baker acknowledged that they agreed to level the stock once his personal credit was no longer necessary for the financial well-being of the corporation.

The majority finds the agreement was not definite because at the time they made the leveling agreement there were three parties—Gannon, Baker, and Nail—and at the time of the suit there were two—Gannon and Baker. Thus, the majority holds, because the agreement did not specify how the stock would be equalized if one of the three sold his interest, the entire agreement was unenforceable.

I would hold that the agreement to level was a certain and definite agreement. Under the agreement, Gannon could expect to get as much as one-half of the stock to as little as one-third of the stock. I would reverse and remand the issue of Gannon's percent of stock ownership to the jury. The majority hold he gets nothing because they did not plan for Nail selling his interest to Baker.