# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00656-CV

**DKH Homes, LP, Appellant**

**v.**

**Beth A. Kilgo and Billy R. Kilgo, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-10-000200, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

DKH Homes, LP ("DKH") sued Beth and Billy Kilgo ("the Kilgos") for breach of contract alleging that the Kilgos failed to comply with a contractual obligation to build a new home, using DKH as the builder, on a lot they purchased from DKH. After a bench trial, the court found that the contract between DKH and the Kilgos did not contain an enforceable obligation to construct a home and that DKH's evidence of lost profits was too speculative to support an award of damages. The trial court rendered a take-nothing judgment in favor of the Kilgos, and this appeal followed. We will affirm.

## BACKGROUND

The Kilgos and DKH executed an Unimproved Property Contract ("the Contract") on September 5, 2007, pursuant to which DKH agreed to sell, and the Kilgos agreed to buy, an unimproved lot in Travis County ("the Lot") for $200,000 with a closing date on or before

September 28, 2007. The Contract included Addendum A, which was titled Exclusive Construction

Option and Right of First Refusal Agreement ("the Agreement"). The Agreement was executed by

DKH and the Kilgos on September 4, 2007 and includes the following paragraphs:

> 2.  Commencement of Construction:  [The Kilgos] agree to commence construction of a single family residence (and its attached or detached garage) on the Property (the "Residence"), in compliance with paragraph 3 below, within twelve (12) months after the date of this Agreement.
>
> 3.  Exclusive Builder:  [The Kilgos] agree that they will exclusively utilize [DKH] as the contractor for construction of the Residence, and all related improvements to the Property, pursuant to the terms of [DKH]'s then-current form of standard variable price residential construction contract, providing for a total contract price including reimbursement of actual construction costs, payment of general overhead and supervision of three percent (3%) of the actual construction costs and an additional contractor's profit of fifteen percent (15%) of the actual construction costs of the Residence (and all related improvements to the Property) (i.e., "cost plus").

DKH contends that it discounted the Lot's purchase price by $25,000 in exchange for the Kilgos'

execution of the Agreement and that it would not have entered into the Contract without the executed

Agreement. It is undisputed that the parties closed on the sale of the Lot in a timely fashion and that

the Kilgos paid the full purchase price of $200,000.

In the spring of 2009, DKH contacted the Kilgos to inquire as to the status of building

a house on the Lot. At that time, the Kilgos informed DKH that they were not planning to build on

the Lot, but instead had bought a different lot and were planning to build a house on that lot using

a different builder as the contractor. In January 2010, DKH sued the Kilgos alleging that they

breached their agreement to build a house on the Lot and seeking to recover either actual damages,

liquidated damages under a provision of the Agreement, or specific performance of the promise to

build the house. After a bench trial, the court rendered a take-nothing judgment in favor of the Kilgos based on its conclusion that the Agreement was unenforceable and that the evidence DKH presented in support of its damages claim was too speculative to support an award of damages. The trial court filed findings of fact and conclusions of law in support of the judgment. In its first three issues on appeal, DKH challenges the following conclusions made by the trial court: (1) the Agreement is unenforceable as a matter of law because it does not contain certain disclosures required by statute to be included in residential construction contracts; (2) the Agreement is unenforceable because it does not contain the essential elements of a contract to build a home; and (3) the Agreement is an unenforceable agreement to agree to enter into a residential construction contract in the future. In its fourth and fifth issues, DKH challenges the trial court's findings that the evidence of DKH's lost profits was speculative and that a liquidated damages provision contained in the Agreement was unenforceable. In its sixth issue, DKH complains that the trial court erred by excluding testimony regarding damages DKH suffered due to the Kilgos' alleged failure to mediate the dispute.

## STANDARD OF REVIEW

We review conclusions of law de novo to determine whether they are legally correct. *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 76 (Tex. App.—Austin 2001, pet. denied). We evaluate the trial court's legal conclusions independently to determine whether the trial court correctly drew the legal conclusions from the facts. *Dallas Morning News v. Board of Trustees*, 861 S.W.2d 432, 536 (Tex. App.—Dallas 1993, writ denied). If the reviewing court determines a conclusion of law

is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2001).

The trial court's admission or exclusion of evidence is reviewed under an abuse-of-discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). The trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). For the exclusion of evidence to constitute reversible error, the complaining party must show that (1) the trial court committed error and (2) the error probably caused the rendition of an improper judgment. *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009) (citing *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992)). The exclusion or admission of evidence is likely harmless if the evidence was cumulative or the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867 (Tex. 2008). But if erroneously admitted or excluded evidence was crucial to a key issue, the error is likely harmful. *Id.*

## DISCUSSION

DKH sued the Kilgos for breach of contract arising out of their failure to build a house on the Lot—using DKH as the construction contractor—within 12 months of signing the Agreement. DKH's claim in this regard is dependent on a finding that the Kilgos entered into an enforceable contract for DKH to build them a home. The trial court found that the Kilgos did not and rendered a take-nothing judgment in their favor. We first consider whether the trial court

4

erroneously concluded that the Kilgos were not obligated to construct a house on the Lot using DKH as the construction contractor.

DKH contends that the construction obligation is contained in the Agreement. The trial court, however, concluded that the Agreement did not constitute an enforceable contract to construct a house. First, the trial court concluded that the Agreement was unenforceable because it did not "contain the essential elements of a contract to build a home." We agree. To be enforceable, a contract must be sufficiently definite in its terms that a court can understand what the promisor undertook. *T. O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). The material terms of the contract must be agreed on before a court can enforce it. *Id.* If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. *University Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ). A lack of definiteness in an agreement may concern various elements, including time of performance, price to be paid, work to be done, or service to be done. *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Terrell v. Nelson Puett Mortgage Co.*, 511 S.W.2d 366, 369 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.).

Whether an agreement has all the essential terms to be an enforceable agreement is a question of law. *See America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 625 (Tex. App.—San Antonio 1996, writ denied). Each contract should be considered separately to determine its material terms. *See T. O. Stanley Boot Co.*, 847 S.W.2d at 221 (citing *Bridewell v. Pritchett*, 562 S.W.2d 956, 958 (Tex. Civ. App.—Fort Worth 1978, writ ref'd n.r.e.)). We conclude that the

5

Agreement at issue does not include terms essential to an agreement to construct a house. For example, the Agreement does not include any of the information essential to define the undertaking such as the size of the house contemplated, the price of the house on a per-square-foot or other basis, or the time for completing construction. In fact, DKH's principal Keith Husband acknowledged at trial that the Agreement lacked several elements he considered essential to a contract to build a house, including a construction budget, plans and specifications for the home to be built, a method for handling change orders, and completion dates or estimated completion dates. The Agreement refers only to the construction of "a single family residence" for an undetermined price. The missing elements are essential terms of a contract to build a house; without them, the Agreement is too indefinite to constitute an enforceable agreement.

DKH contends that the Agreement did not include these essential terms because the parties contemplated entering into a separate residential construction contract "once the Kilgos finalized their plans on what house they wanted to build on the property." If that is the case, however, the Agreement is simply an agreement to make a future contract. To be enforceable, an agreement to enter into a future contract must specify all its material and essential terms, leaving none to be agreed on as the result of future negotiations. *See Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 135 (Tex. App.—Waco 2005, pet. denied) (citing *Parker Chiropractic Research Found. v. Fairmont Dallas Hotel Co.*, 500 S.W.2d 196, 201 (Tex. Civ. App.—Dallas 1973, no writ)). When an essential term is left open for future negotiation, the parties have nothing more than an unenforceable "agreement to agree." *See Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App.—San Antonio 2002, pet. denied). As previously stated, the Agreement here lacks several

6

of the terms essential to a contract to build a home. Consequently, it does not constitute an enforceable agreement to enter into a future contract but is instead an unenforceable agreement to agree. The trial court properly concluded that if, as DKH contends, Addendum A is not the construction contract itself, it is simply an "'agreement to agree' in the future to a residential construction contract and is unenforceable." We overrule DKH's second and third appellate issues.

In its first issue, DKH challenges the trial court's conclusion that the Agreement is not enforceable because it does not contain the disclosures then required by statute to be included in a contract for construction of a new home. *See* Act of May 24, 2007, 80th Leg., R.S., ch. 843, § 30, 2007 Tex. Gen. Laws 1752, 1761 (expired Sept. 1, 2009) (contract for new construction not enforceable unless it contains builder's name and certificate of registration and certain notice provisions). DKH does not dispute that the disclosures are missing from the Agreement, but contends that the disclosures were not required because the Agreement is not a residential construction contract subject to the statute. Having already concluded that the Agreement is not enforceable because it lacks essential terms or is at best an unenforceable agreement to agree, we need not address whether the Agreement is unenforceable for this additional reason—failure to contain statutorily required notice provisions.

Having concluded that there was no enforceable contract obligating the Kilgos to construct a home on the Lot using DKH as the construction contractor, there could be no breach of such a contract and DKH was not entitled to recover damages under that theory. Consequently, we need not address DKH's fourth and fifth issues challenging the district court's conclusions that DKH's "evidence regarding lost profits was speculative and [it] was not entitled to an award of

7

expectancy damages" and that "the liquidated damages clause in [the Agreement] is an illegal penalty and unenforceable." The trial court properly rendered a take-nothing judgment against DKH on its breach-of-contract cause of action.

In its sixth issue, DKH complains of the trial court's refusal to permit Keith Husband, DKH's principal, to testify regarding damages arising out of the Kilgos' alleged failure to mediate this dispute. The trial court expressly found that "the parties and their attorneys met prior to the time suit was filed in an attempt to resolve their differences," and "[t]he mediation provisions found in [the Agreement] were not materially breached by any of the parties." Given that the Agreement was unenforceable, failure to mediate could not constitute a material breach and exclusion of evidence of such failure could not be harmful error. Assuming the Agreement did contain an enforceable mediation agreement, however, would not change the result. The trial court concluded that neither the Kilgos nor DKH failed to comply with their mediation obligations. DKH does not challenge these findings. When, as here, findings of fact are filed, unchallenged findings are binding on the appellate court unless the contrary is established as a matter of law, or there is no evidence to support the finding. *See McGalliard v. Kuhlman*, 722 S.W.2d 694, 696-97 (Tex. 1986). Husband testified at trial that he met with the Kilgos and their attorney prior to DKH's filing suit, but the parties were not able to reach an agreement on how to resolve their differences. He also testified that there were further attempts to negotiate a resolution even after suit was filed. DKH makes no effort in its brief to establish that, as a matter of law, the Kilgos failed to negotiate with DKH in an effort to resolve this dispute, and there is evidence to support the trial court's finding that the Kilgos did not breach an agreement to negotiate. The Agreement requires that "the dispute shall be submitted to mediation

8

before resorting to litigation." While Husband testified that DKH requested mediation and the Kilgos declined, there is no evidence that DKH attempted to compel mediation before or after filing suit.

In any event, the trial court did not abuse its discretion in refusing to admit testimony from Husband regarding the damages allegedly arising from any breach of an agreement to mediate. DKH argued that, as a result of the failure to mediate the case, it incurred attorney's fees in prosecuting its breach-of-contract claim against the Kilgos and attempted to testify regarding the amount of those fees. Counsel for the Kilgos objected to Husband's testimony on the ground that it called for speculation. The trial court sustained the objection and excluded the testimony. This was not an abuse of discretion. DKH's claim that the attorney's fees it has incurred in prosecuting this suit resulted from the Kilgos' failure to mediate presupposes that the parties would have reached an agreement had they mediated the case. That the parties would have reached an agreement in mediation is pure speculation, and any testimony to the effect that the failure to mediate necessarily caused DKH to incur attorney's fees for filing suit is too speculative to constitute relevant or probative evidence. We overrule DKH's sixth issue.

## CONCLUSION

The trial court did not err in concluding that the agreement on which DKH bases its breach-of-contract cause of action is unenforceable. The trial court did not abuse its discretion in excluding testimony regarding damages arising from the Kilgos' alleged failure to mediate this dispute. Consequently, we affirm the trial court's judgment.

9

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   May 11, 2011