James D. DURHAM, Jr., Appellant,

v.

CANNAN COMMUNICATIONS, INC., Appellee.

No. 07–82–0235–CV.

Court of Appeals of Texas, Amarillo.

Dec. 15, 1982.

Rehearing Denied Jan. 10, 1983.

Second Rehearing Denied Feb. 3, 1983.

Wolfram Law Firm, Frederic M. Wolfram, Amarillo, for appellant.

Gibson, Ochsner & Adkins, Joe Harlan, Amarillo, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant James D. Durham brings this appeal from a summary judgment in favor of appellee Cannan Communications, Inc. Appellant brings eleven grounds of asserted error. For reasons hereinafter set out we reverse the summary judgment and remand the case for further proceedings.

The record reveals that appellant is an attorney at law practicing in the city of Amarillo. The appellee is a corporation owning a television broadcasting station also located in Amarillo. This case involves

two broadcasts made on appellee's television station on March 31, 1978. In these broadcasts appellee's newsman reported that after two weeks of personal investigation he had discovered that appellant was connected with a club located just north of Amarillo called the Chicken Ranch, which was used as a front for various activities including orgies and prostitution. In the report the newsman identified his sources for the story as Anna Bryant, owner of the lounge and Eddie Kirkwood, a deputy in the Potter County Sheriff's office. He interviewed both Bryant and Kirkwood on the air and both stated that appellant was involved with the Chicken Ranch. On April 3, 1978 this libel suit was brought by appellant. During pretrial discovery proceedings, appellant deposed, among others, appellee's news director and anchorman Ben Boyett. At numerous times during the deposition, appellant asked Boyett to disclose appellee's sources for the broadcast. While Boyett disclosed the names of those sources who were mentioned in the broadcast he refused to disclose the names of any other sources who may have assisted appellee in its investigations. After a hearing, the trial court refused appellee's motion to compel Boyett to disclose appellee's sources. On the 20th day of April, 1982, the summary judgment in question was rendered on the basis that appellant was a public figure as a matter of law requiring the showing of actual malice on the part of appellee and nothing existed which would raise a fact issue on this question.

Appellant raises eleven points of asserted error. These points of error can be divided into two general areas. First, appellant, in his second point asserts error in denying the motion to compel disclosure of news sources because such answers are discoverable under Tex.R.Civ.P. 186a. Secondly, appellant, in his first and in his third through eleventh points argues error in the granting of the motion for summary judgment. The disposition which we make of points five through eight renders, we think, discussion of the remainder of the points attacking the summary judgment unnecessary. We discuss point two because we think that question

relevant to preparation for any trial on the merits.

■ As stated above, in point two, appellant contends that Rule 186a requires disclosure of certain news sources. This rule states in relevant part:

> Any party may take the testimony of any person, including a party, by deposition ... for the purpose of discovery or for use as evidence in the action or for both purposes. Unless otherwise ordered by the court as provided by Rule 186b, the deponent may be examined regarding any matter, not privileged, *which is relevant to the subject matter involved in the pending action,* whether it relates to the claim or defense of the examining party, including the ... identity and location of persons ... having knowledge of relevant facts. [Emphasis added.]

The trial court is allowed wide latitude in its decision on whether or not to order discovery and its action cannot be set aside unless there is a clear showing of abuse of discretion. *Martinez v. Rutledge,* 592 S.W.2d 398 (Tex.Civ.App.1979, writ ref'd n.r.e.). The question presented by this point is whether the facts show abuse of discretion on the part of the trial court in refusing to order disclosure.

■ The burden is upon appellant, as the moving party, to both plead and prove relevancy of information sought and a mere conclusion or assertion is not sufficient. *Lueg v. Tewell,* 572 S.W.2d 97 (Tex.Civ. App.—Corpus Christi 1978, no writ history). At the time of the broadcast in question, appellee was considering the broadcast of another story concerning appellant's alleged involvement in a conspiracy to fix beef prices. This other story was never broadcast. At the deposition Boyett was extensively questioned in an effort to obtain the names of any sources who may have played a part in the development and investigation of either story. Boyett did reveal the sources named on the air as a source of the broadcast in question. There is no proof or showing to suggest that appellee's sources and actions in the investigation of the beef price fixing story which was never broad-

cast had any connection or would shed any light on appellant's actions in developing and broadcasting the Chicken Ranch story. Rule 186a was not intended to permit "fishing excursions." *Bryan v. General Electric Credit Corp.,* 553 S.W.2d 415, 419 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ history). Since the question of Boyett was so broad and pertains to sources for stories other than that in question, we cannot say the record reveals an abuse of discretion in the action of the trial court in overruling the motion in question. Appellant's point of error two is overruled.

Appellant groups and argues his points five through eight together and we will likewise consider them together. In these points appellant argues that the trial court erred in determining as a matter of law that appellant was a public official or public figure and, consequently, it applied the wrong legal standard in determining whether or not appellee's motion for summary judgment should be granted.

Under the standard promulgated by the United States Supreme Court in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), a "public official" plaintiff in an action such as this cannot recover damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280, 84 S.Ct. at 726. The New York Times rule, which previously had been restricted in application to "public officials" was extended to cover "public figures" in *Curtis Publishing Company v. Butts* and its companion case, *Associated Press v. Walker,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

The basis of appellee's motion for summary judgment, accepted by the trial court, is that appellant was either a "public official" or "public figure" and consequently there could be no recovery unless appellant established by clear and convincing evidence that appellee knowingly broadcast that which it knew to be false or that which it had a strong suspicion was untrue or false or that the broadcasts were made with constitu-

tional malice. It is readily apparent that the initial and crucial question for our decision is whether the trial court correctly classified appellant as a "public official" or "public figure."

### I. Public Official

█ The record shows that about six months before the broadcasts in question appellant was appointed as special counsel for a court of inquiry investigating alleged irregularities in Potter County Fund management. However, the final report of the court of inquiry was returned some two months prior to the broadcasts and at the time of the broadcasts appellant was not a special counsel or on the county payroll. The U.S. Supreme Court has stated that a public official is, among other things, one "who *hold*[s] governmental office." *Gertz v. Welch,* 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974) [Emphasis added.] Appellee cites *Rosenblatt v. Baer,* 383 U.S. 75, 87 n. 14, 86 S.Ct. 669, 676 n. 14, 15 L.Ed.2d 597 (1966) for the proposition that a person can still be deemed a public official for the purposes of a defamation suit even if, at the time the offensive statement was made he was no longer serving in his governmental position. While it is true that the Court in *Rosenblatt* did state that under certain circumstances a person could be deemed a public official even though he no longer held his governmental position at the time that the allegedly defamatory statement was made, we believe even under that case it would be improper to classify appellant as a public official. *Rosenblatt* concerned statements made by a local newspaper reporter which arguably implied that the plaintiff had mismanaged public funds while he had been in charge of a state-run recreation area. These statements arguably concerned the way in which he conducted his duties while he was an official. In the instant case, the allegedly defamatory statements did not concern the manner in which appellant conducted his official duties as a special prosecutor. Instead, they dealt with his alleged involvement with a house of prostitution. It is true that the courts have recognized a case where a public official is so well-known in his com-

munity that the general public automatically associates him with his official position and an express reference to the individual's official capacity is unnecessary and the reference is implied. *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 815 (Tex.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573. However, we do not believe that the summary judgment evidence would justify such a finding in this case. Since appellant was not a holder of a governmental office at the time of the broadcast in question and since the broadcast did not discuss his performance at duty as a special prosecutor, we conclude he was not a "public official" within the purview of *New York Times v. Sullivan* and its progeny. We now proceed to consideration of the "public figure" question.

## II. Public Figure

In the *Gertz* case the Supreme Court further elaborated on the "public figure" concept. The plaintiff in that case was an attorney representing a murder victim's family in a civil suit against a police officer who had been convicted of the murder. The magazine article giving rise to the libel suit falsely implied that the plaintiff had a criminal record; was a "Leninist" or a "Communist-fronter," and identified the plaintiff as a former official of a Marxist organization. In making the determination as to whether Gertz was a "public figure" the court observed that "public figures" fall into two general categories:

"In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. *In either case such persons assume special prominence in the resolution of public questions.* [Emphasis added]. 418 U.S. 323 at 351, 94 S.Ct. 2997 at 3012, 41 L.Ed.2d 789.

The Court there concluded that that plaintiff did not fit within the category of individuals who are "public figures" for all purposes and in all contexts. It then con-

sidered the question whether the plaintiff was a public figure with respect to the particular controversy giving rise to the defamation and concluded:

"In this context it is plain that petitioner was not a public figure ... *He plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome.* [Emphasis added.] 418 U.S. at 352, 94 S.Ct. at 3013.

It thus appears that the question presented for our determination is twofold. Is appellant a "public figure" for all purposes and, if not, is he a "public figure" for the issues discussed in the broadcast in question here?

■ Examination of the summary judgment evidence reveals that appellant had achieved a certain amount of notoriety in the Amarillo region. However, no evidence indicates his notoriety extended beyond the Amarillo region. While no U.S. Supreme Court opinion deals specifically with the question as to whether a person can be an all-purpose public figure if he has only achieved regional notoriety, the U.S. Court of Appeals for at least two circuits have held an individual can be deemed an all purpose public figure under such circumstances. *Walbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287, 1295 n. 22 (D.C. Cir.1980), *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128; *Brewer v. Memphis Publishing Co., Inc.,* 626 F.2d 1238, 1254 (5th Cir.1980), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 973 (1981). However, in order to be classified as such an all-purpose public figure the fame and notoriety must be of a high level. Indeed, the Court of Appeals for the District of Columbia has stated that a person can be an all-purpose public figure only "if he is a 'celebrity' his name a 'household word'— whose ideas and actions the public in fact follows with great interest." *Walbaum,* 627 F.2d at 1292. This definition seems consistent with the U.S. Supreme Court's approach in *Gertz* and we adopt it here.

The summary judgment evidence reveals that appellant had achieved some notoriety when he acted as defense counsel for a city

patrolman who had been dismissed by the chief of police for various alleged disciplinary infractions. These activities were reported on by the local press. He also achieved some degree of notoriety when he was appointed to serve on a panel investigating the causes of a jail riot in Potter County. The local press reported on both his appointment to the panel and on the report issued by the panel a few months later. However, appellant achieved his greatest notoriety when he was appointed special counsel for a court of inquiry which was charged with investigating alleged irregularities in the way in which Potter County funds were being managed. As a result of information uncovered by the Court of Inquiry, the Potter County Sheriff and a deputy sheriff were indicted. The court of inquiry, in a report written by appellant, also recommended that the Potter County Auditor should be forced to resign for allegedly mismanaging Potter County funds. Appellant's appointment to the court of inquiry and the subsequent actions of the court were regularly reported on by the local news media. Appellant also held a number of press conferences during his tenure as special counsel—at least two televised press conferences by appellant's own admission—in which he answered questions about the progress of the investigation. Appellant's appointment as special counsel took place about six months prior to appellee's broadcasts. The court of inquiry's final report was issued about two months later. It is apparent, we think, that appellant had achieved notoriety for his activities.* However, we believe it is another matter as to whether this evidence indicates that appellant was a celebrity or household name and thus an all-purpose public figure.

■ While the Supreme Court has never specifically articulated the factors towards which a court should look in determining if an individual is an all-purpose public figure we note that in *Gertz* the court placed considerable reliance upon the fact that the defendant had presented no proof that the local population had heard of the plaintiff. In determining that he was not a public figure the court used the following language:

> We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. *It is preferable to reduce the public figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.* [Emphasis added]. 418 U.S. 323 at 351, 94 S.Ct. 2997 at 3012, 41 L.Ed.2d 789.

In this instant case appellee failed to present any proof as to how well known the appellant was in the community. Counterbalancing the lack of proof as to appellant's general fame is the substantial press coverage of appellant's activities, particularly his conduct as special counsel for the court of inquiry, and the appellant's general availability to the press during this period. No one factor is dispositive. *Walbaum v. Fairchild, supra* at 1295. Weighing all the factors, however, we conclude that the summary judgment evidence is insufficient to establish as a matter of law that appellant was such a celebrity or household name as to make him an all purpose public figure.

■ While the evidence does not support a finding that appellant was an all-purpose public figure, we must determine if appellant was a limited public figure for the

---

* In our consideration of the public figure question, appellee directs our attention to an April 4, 1978 newspaper story dealing with appellant's alleged involvement with the Chicken Ranch. However, this story was written after appellee had broadcast the story in question. The U.S. Supreme Court has indicated that we should not consider post-defamation press coverage in determining whether or not an individ-

ual is a public figure. See *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). We think this logical. To do otherwise would be to permit the press to turn a person into a public figure by publicizing the defamation itself. We, therefore, cannot consider this story in determining whether or not appellant was a public figure.

particular issue which was the subject to appellee's allegedly defamatory broadcast, i.e., the controversy surrounding the Chicken Ranch. Commonly, persons are public figures when they "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of issues involved." *Gertz,* 418 U.S. at 345, 94 S.Ct. at 3009. In this case, appellant was certainly at the forefront of the controversy surrounding the alleged mismanagement of public funds by certain Potter County officials. Indeed, all the record evidence of appellant's predefamation activities concerns his involvement with the controversies involving the management of the county funds. It might well be concluded that appellant was a limited public figure for those particular public controversies.

■ In this case, however, the broadcast in question concerned appellant's alleged involvement with the Chicken Ranch. This was a controversy apart from the public controversies in which appellant had thrust himself to the forefront. There is no evidence that appellant's alleged involvement with the Chicken Ranch had anything to do with his legal and investigative activities for the county government. There is no evidence which suggests that appellant had sought publicity over his alleged Chicken Ranch activities or that the Chicken Ranch had become a center of public controversy prior to the time of appellee's broadcast. We therefore conclude that the summary judgment evidence failed to establish that appellant had achieved the status of a public figure within the context of his involvement with the Chicken Ranch.

■ A private individual who is not a public official or public figure may recover damages from a publisher or broadcaster of a defamatory falsehood as compensation for actual injury upon a showing that the publisher or broadcaster knew or should have known that the defamatory statement was false. *Foster v. Laredo Newspapers, Inc., supra.* Appellees motion for summary judgment sought to establish the applicability of the New York Times standard to appellant as a "public official" or "public figure" and then to negate the existence of any fact issue with regard to actual malice.

Appellee has not asserted a right to summary judgment upon a negligence standard. We therefore find it unnecessary to determine whether the summary judgment proof negates the existence of any fact issues with regard to negligence. Since we have concluded that the summary judgment evidence did not support a finding that as a matter of law that appellant was a "public official" or "public figure" for the purposes of this suit we must reverse the summary judgment rendered. Appellant's points of error five through eight are sustained and the case remanded.

## ON MOTIONS FOR REHEARING

Both appellant and appellee have filed motions for rehearing in this case. Appellee asserts this court erred: (1) in reversing the judgment on a point not assigned; (2) in reversing on a point not stated or briefed; (3) in holding that plaintiff was not a public official for defamation purposes; (4) by failing to hold as a matter of law that appellant was both a public official and a public figure; (5) by holding that a news media can be held liable in damages upon a news story accurately reported; (6) by, in its ruling, violating the established rule of law that it is the duty of the appellate court to sustain the judgment of the trial court if that judgment is correct upon any theory of law; and (7) in denying due process by reversing the judgment of the trial court upon grounds not supported by the record. Appellant asserts error on the part of this court in failing to reverse the trial court's denial of appellant's motion to compel answers to disclose names of witnesses.

In advancing its first two assertions, appellee has apparently overlooked points of error five, six and seven of appellant's brief wherein he specifically attacked the finding of the trial court that appellant was a public figure as a matter of law and its counterpoint five wherein appellee asserted that, as a matter of law appellant was a public official and a public figure. Examination of the opinion will reveal that appellant's points of error five through seven

were granted and the basis therefor explained.

 It must also be remembered that this was an appeal from the granting of a motion for summary judgment. In summary judgment cases the summary judgment granted should be affirmed only if the summary judgment record establishes a right thereto as a matter of law and the movant must establish that it is entitled to the judgment by reason of the matters set out in the motion. *Clear Creek Basin Auth. v. City of Houston,* 573 S.W.2d 839 (Tex. 1978); *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970); *Harrington v. Young Men's Christian Association of Houston and Harris County,* 452 S.W.2d 423, 424 (Tex.1970). The burden of demonstrating the lack of a genuine issue of material fact is upon the movant and all doubts are resolved against him. *Womack v. Allstate Ins. Company,* 156 Tex. 467, 296 S.W.2d 233, 235 (1957); *Lindley v. Smith,* 524 S.W.2d 520, 523 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Cox v. Bancoklahoma Agri-Service Corp.,* 641 S.W.2d 400, 402 (Tex.App.—Amarillo 1982, no writ).

This court did not hold that a news media could be held liable in damages upon a news story accurately reported. We did hold that, under the rules governing the consideration of an appeal from a summary judgment, the summary judgment evidence under consideration in this appeal did not support a finding that, as a matter of law, appellant was a "public official" or "public figure." We pointed out that since appellee had not asserted a right to summary judgment upon a negligence theory it was not necessary to determine if the summary judgment proof negated the existence of any fact issue with regard to negligence. Appellee's motion for rehearing is overruled.

We have also considered appellant's motion for rehearing and we remain convinced our ruling on this point was correct. Appellant's motion for rehearing is also overruled.