L. Jack THOMPSON, Appellant,

v.

Kathryn DART and Mary Lucille Carper, Appellees.

No. 04–86–00605–CV.

Court of Appeals of Texas, San Antonio.

Jan. 27, 1988.

Rehearing Denied March 9, 1988.

Yale Leland Kerby, Uvalde, for appellant.

Michael C. Boyle, Uvalde, for appellees.

Before ESQUIVEL, REEVES and DIAL, JJ.

## OPINION

REEVES, Justice.

This is a suit for title and possession to a one-quarter mineral interest in ranch land and the proceeds from the sale of that ranch land pursuant to an alleged oral gift.[1]

Appellant and plaintiff below, L. Jack Thompson, brought suit against Kathryn Dart and Mary Lucille Carper, administrators of the estate of Sadie Meacham under her written will. Appellant alleged that in 1965, Sadie and her husband, Banks Meacham, offered to give their ranch land to L. Jack Thompson and his wife, Carlie, if the Thompsons would take care of the Meachams. The Thompsons sold their home, purchased thirty acres of the Meacham ranch, and moved a house onto the property. The Thompsons moved into the house on their newly acquired property, but later moved into the Meacham's ranch house to better care for Sadie after Banks died. Sadie wrote a will in 1975 in which she left the ranch land and all her personal property to Jack and Carlie Thompson.

After suffering a stroke, Sadie moved into a nursing home, as did Jack Thompson. During her stay in the nursing home, Sadie revoked an earlier power of attorney she had executed in favor of Carlie and Carl Thompson (the Thompsons' son) and executed a new one in favor of her two nieces, the defendants. In July 1981, Sadie sold all of the ranch, except a one-fourth mineral interest which she retained for herself.[2] In October 1981, Sadie executed a new will in which she left all of her property to her nieces, Dart and Carper. She appointed her nieces co-executrices of her will.

Sadie died November 11, 1985. Dart and Carper probated her will and distributed the property among themselves pursuant to the terms of the will. Jack Thompson brought this suit on his own behalf and as survivor of his wife, Carlie, who died in 1986, to recover the proceeds from the sale of the ranch and the one-fourth mineral interest. He based his claim to the proceeds on the alleged oral gift of realty.

The trial court rendered a summary judgment in favor of defendants.

Appellant's first two points of error contend fact issues were raised precluding summary judgment. His first argument complains affidavits and/or materials were not timely filed for the summary judgment; that affidavits were not made on the affiants' personal knowledge and do not contain facts admissible in evidence; and a summary judgment should not be granted in lieu of special exceptions when the defendant claims the plaintiff's pleadings fail to allege a cause of action.

Appellant states appellees filed an affidavit in support of their second motion for summary judgment too late to be considered without the trial court's permission. Appellant neglects to point out to this Court the affidavit or material to which he refers.

■ On October 6, 1986, appellees filed their second motion for total or partial summary judgment and served appellant's attorney. Appellant filed an untitled document in which he urged summary judgment should not be granted. Earlier that same day, October 10, appellees filed the affidavit of Helen Angermiller in support of their motion for summary judgment and

---

1. Appellant's alleged cause of action appears to be one for specific performance of an oral gift.

2. Heretofore, she sold 8.8 acres to appellant's son.

served appellant's attorney. Appellees' second motion for summary judgment was heard November 5, 1986, and the order granting the motion in full was signed November 10, 1986.

TEX.R.CIV.P. 166–A(c) provides that, without notice to opposing counsel and permission of the trial court, a motion for summary judgment "and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing." We do not have a copy of the fiat setting the hearing date, but the final judgment states the hearing was held November 5, 1986. Since the motions and affidavit were filed prior to October 14, 1986, no permission of the trial court was necessary.

Appellant also states the affidavits must be made on the personal knowledge of the affiant and state facts which would be admissible in evidence. Appellant claims affidavits relied on by appellees fail to meet these requirements.

■ Rule 166–A(e) mandates the requirements of an affidavit for summary judgment proof. Such "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Mary Lucille Carper attached her sworn affidavit to defendants' first motion for summary judgment. In her affidavit she stated that she is an adult resident of Uvalde County, Texas, has personal knowledge of the facts set forth in her affidavit, and that she is competent to testify to these facts. Carper stated that Sadie Meacham, the deceased, revoked a power of attorney and executed a new one naming Carper and Dart as her attorneys-in-fact. She further stated that during Sadie's lifetime, Sadie conveyed the realty, except a one-fourth mineral interest, to third parties, and the proceeds were to be used for the nursing home and medical needs of Sadie. She stated she has no personal knowledge of any agreement or contract between Sadie and Jack Thompson in which Sadie contractually promised to convey the realty to appellant by will.

The next affidavit is one filed by appellant, L. Jack Thompson. Although we consider it strange that he would question the validity of his own affidavit, we have concluded that it passes muster. His affidavit states he meets the prerequisites of making an affidavit: he has personal knowledge of the facts set forth and is competent to testify to these facts. He stated that "[i]n April of 1966, Sadie Meacham asked me and my wife, Carlie [sic] to take care of my uncle Banks Meacham and herself so long as we were able and in exchange they would transfer to us their ranch." He and his wife sold their home, purchased thirty acres of the Meacham's ranch and moved a house on the property, eventually moved into Sadie's and Banks' house, tended to the Meachams physically and financially, and made improvements to the ranch. Sadie executed a will in 1975 in which she bequeathed and devised all of her property to the Thompsons. "She reminded us from time to time that the property was ours. I fully expected to receive ranch property [sic] remaining or if my son sold the property the remaining balance of monies she possessed at death." The ranch was sold prior to the time Carper and Dart took over the care of Sadie. "My wife and I completed our agreement made with Aunt Sadie in every way."

The affidavits, on their faces, comply with the requisites of TEX.R.CIV.P. 166–A(e). Both affidavits appear to be made on the personal knowledge of the affiant. Certain statements concerning what Sadie told appellant probably are inadmissible, but they are in his favor, and no objection was raised by either party. The affidavits are admissible and were properly considered by the trial court.

The third affidavit is that of Helen Angermiller, the Tax Assessor–Collector for Uvalde County. She stated she is an adult resident of Uvalde County but does not

state she is competent to testify. The matters she recites in her affidavit consist of the names of land-owners listed on the tax rolls for Uvalde County for specific years. Appellant raised no objection to the failure of affiant to aver that she is competent to testify and has thus waived complaint. *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230, 233–34 (Tex.1962); *Cottrell v. Carrillon Associates, Ltd.,* 646 S.W. 2d 491, 494 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

■ Appellant argues a summary judgment should not be used when the complaint is that the plaintiff has failed to allege a cause of action. Rather, he asserts, special exceptions which permit a plaintiff to cure the defect is the appropriate vehicle. A pleading deficiency which cannot be cured by amendment, *e.g.,* a failure to state a cause of action, is suitable for disposition by summary judgment, and special exceptions are not necessary. *Hidalgo v. Surety Savings & Loan Association,* 462 S.W.2d 540, 543 n. 1 (Tex.1971); *Jacobs v. Cude,* 641 S.W.2d 258, 261 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); Hittner, *Summary Judgments in Texas,* 35 BAYLOR L.REV. 207, 214 (1983).

Appellant's first point of error is overruled.

Appellant urges in his second point of error that a fact issue concerning an oral gift of realty was raised and thus it was error for the trial court to grant summary judgment.

The movant in a summary judgment bears the burden of demonstrating the lack of a genuine issue of material fact. All doubts must be resolved against him. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). A defendant seeking summary judgment must show that no material issue of fact exists as to one or more elements of the plaintiff's cause of action. *Griffin v. Rowden,* 654 S.W.2d 435, 435–36 (Tex.1983). He need establish only that at least one of the elements has been established conclusively

against the plaintiff. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970).

■ A gift of realty may be made in two ways—either by deed or by parol gift. There are three requisites to uphold a parol gift of realty in equity: (1) a gift in praesenti, (2) possession under the gift by the donee with the donor's consent, and (3) permanent and valuable improvements made on the property by the donee with the donor's knowledge or consent or, without improvements, the existence of such facts as would make it a fraud upon the donee not to enforce the gift. *Grimsley v. Grimsley,* 632 S.W.2d 174, 178 (Tex.App.— Corpus Christi 1982, no writ); *Moody v. Ireland,* 456 S.W.2d 494, 496 (Tex.Civ.App. —Waco 1970, writ ref'd n.r.e.). The donee's possession must be in the nature of an owner's right to control. *Dawson v. Tumlinson,* 150 Tex. 451, 242 S.W.2d 191, 194 (1951).

■ "In praesenti" means at the present time; it is used in opposition to *in futuro.* BLACK'S LAW DICTIONARY 712 (5th ed. 1981). Thus, to be a gift in praesenti, the donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee. *Christian v. Walker,* 381 S.W.2d 675, 678 (Tex.Civ.App. —Texarkana 1964, no writ). The three elements which constitute a gift are (1) donative intent, (2) delivery of the property, and (3) acceptance of the property. *Grimsley v. Grimsley,* 632 S.W.2d at 177. All dominion and control over the property must be released by the owner. *Id.* Appellant, the one claiming the gift, has the burden of establishing these elements. *Id.*

■ Testimony concerning the alleged oral gift was presented by oral deposition, answers to interrogatories, documentary exhibits, and affidavits.

Jack Thompson stated, in his answers to defendants' interrogatories, that the agree-

ment made in April 1961 with Aunt Sadie was that:

Carlie Thompson and Jack Thompson agreed to live in with Banks and Sadie Meacham and give them care and attention and give them personal service for their care and comfort and as long as they were able and Banks and Sadie agreed to transfer and convey to Carlie and Jack Thompson their ranch property, of about 240 acres on Highway 90.

In his affidavit, Jack Thompson stated that "[a]t the same time, we agreed to and bought part of the ranch east of the house, which consisted of about 30 acres, and had a house moved on to it." He further stated that "There came a time when it became financially necessary to sell Aunt Sadie's ranch to care for her...." Carl Thompson, Jack and Carlie's son, purchased property from Sadie "in order to help [Sadie's financial] situation and I agreed it was the thing to do."

By oral deposition, Jack Thompson testified that he and Carlie lived with Sadie for ten years, paid the utilities, and bought the food. He stated that Sadie paid the taxes on the property. He again testified that the Thompsons had an oral agreement with Sadie that she would give them the ranch as long as they cared for her and Banks. He said that Sadie owned 200 acres at the time she died on November 11, 1985. He also testified that he was aware that his son, Carl, was trying to find a purchaser for the ranch.

Mary Lucille Carper, a niece of Sadie's and one of the defendants, testified by oral deposition that Sadie had said she was going to give the ranch to the Thompsons. She had stated "I am going to give them the ranch, because—I am going to take Uncle Banks back to the ranch ... and Carlie and Jack are going to come out there and I am going to give them the ranch." Sadie said nothing about any agreement, just that she was going to give Carlie and Jack the ranch.

Eugene Kincaid, an attorney representing the Thompsons and who had represent-

ed Sadie at one time, said that Jack Thompson told him that he and Carlie were living at the ranch and that Sadie was giving them the ranch because he was taking care of her and her needs. Thompson asked Kincaid to write a deed conveying the ranch to him.

Jack told Kincaid that:

[H]e was taking care of Mrs. Meacham and that he was going to receive this land for taking care of her.

Q: Did Mrs. Meacham ever say that to you?

A: Only on the occasion of the execution of the will.

\* \* \* \* \* \*

The word "contract" was not used. Mrs. Thompson said that they were out there living with her and taking care of her.

Q: Is it your understanding or your belief, based upon your dealing with these people, that this transaction was to take place after her death? Was this property to be transferred to the Thompsons by her will?

A: Yes.

The deed Mr. Thompson asked Kincaid to draw up was not signed because "Mr. Thompson said that Mrs. Meacham would prefer to transfer property by will, rather than by deed." Jack and Carlie never complained about the sale of land from Sadie to Carl. Carl had a lien against the ranch property to secure loans made by the Thompsons to Sadie. Sadie said she was giving the Thompsons the ranch because they were taking care of her.

Carl Thompson, the Thompsons' son, stated in his oral deposition, that he purchased 8.8 acres from Sadie in order to transfer enough money from the family to Sadie to provide for her expenses for a period of time.

The sale was essentially calculated at how much money should—does Aunt Sadie need right now to pay some reasonable period of time's bills and where are

the reasonable boundaries on the ranch that we could cut off a piece of property of approximately that value so that we were able to transfer money to her ... this approach seemed to be to buy some of the ranch, being her only available asset.

The sale was made June 20, 1978.

Carl made $600.00 monthly loans to Sadie rather than continue buying the land and took a lien on the remaining ranch property in Sadie's possession.

Sadie said things to Carl such as "Your mom and dad are going to get the ranch," and "You know it doesn't really matter where you're working on the ranch, because it's really all your mom and dad's."

Sadie's minister, the Reverend Clark Saner, testified in oral deposition, that at one time Sadie told him that "they could have the ranch or she would give them the ranch at her death." "She mentioned that they would get the ranch at her death...."

In a letter from Sadie to her nephew Pard and his wife, Sadie wrote "Im [sic] sure Banks did to [sic] I know he would want me to keep my home that we had worked so hard for, she [Carlie] said she didn't understand it that way—of course I want to give them what I have left, but I want it mine until my death...."

Appellees met their burden of proof by establishing conclusively that no fact issue exists under at least two of the three elements appellant needed in order to establish an oral gift of realty. Appellees established that no gift in praesenti was made. The testimony was that Sadie "was going" to give or was giving them the ranch. Thompson's and Sadie's attorney stated that Sadie did not sign the deed which would presently convey the ranch to the Thompsons because she wanted to transfer the property by will rather than by deed. The ranch was to be given the Thompsons at Sadie's death. This is not a present gift. Further, in considering the alleged donor's actions (*Christian v. Walker*, 381 S.W.2d at 678), we find no present gift was intend-

ed. Sadie continued to pay the property taxes on the ranch, sell ranch acreage, mortgage the ranch, and act generally as though no divestiture of her property rights had occurred.

Further, appellees established that the Thompsons had no possession under the alleged gift as would assert their ownership rights. Though they lived on the ranch, Sadie continued to pay the taxes on the property. With the Thompsons' knowledge, Sadie sold 8.8 acres of the ranch to Carl Thompson and executed a lien on the property to secure her debts. The Thompsons' son was seeking a buyer for the ranch for Sadie. The Thompsons themselves purchased from Sadie thirty acres of the land they claim as their own, and considered the land as Sadie's assets to sell for her maintenance—acts inconsistent with their claim of gift.

Appellees established as a matter of law that there is no genuine fact issue on at least two elements of appellant's cause of action. The trial court did not err in granting summary judgment. Appellant's second point of error is overruled.

Appellant complains in his third point of error that appellees' motion for summary judgment is procedurally flawed because it is not supported by affidavit or "according to court rule." Appellant complains the exhibits were not sworn or certified copies.

■ Rule 166–A provides that a summary judgment shall be rendered:

if the pleadings, depositions, answers to interrogatories, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing ... show that ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.

TEX.R.CIV.P. 166–A(c). It is not necessary that the depositions, admissions, and affidavits be formally offered in evidence

at the summary judgment hearing. They must only be on file, either independently or as part of the motion for summary judgment. *Richards v. Allen*, 402 S.W.2d 158, 161 (Tex.1966); *Murray v. Texas Department of Public Safety*, 461 S.W.2d 210, 212 (Tex.Civ.App.—Eastland 1970, no writ).

An affidavit which refers to written documents must include certified or sworn copies of those documents. TEX.R.CIV.P. 166–A(e). The documents may not be incorporated into the affidavit by reference to attachments to other pleadings. *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d at 233. However, an objection to a defect in the form of the affidavit or its failure to include certified or sworn copies of documents to which it refers must be made in the trial court. "[O]bjections of this kind may not be raised for the first time on appeal when it fairly appears from the record that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d at 234.

Appellant failed to complain to the trial court that appellees did not attach certified or sworn copies of their documents to the affidavits. In an untitled motion, appellant responded to appellees' second motion for summary judgment. In his response, appellant contended that the law supported his case and relied on prior briefs he filed. He further stated that appellees' motion for summary judgment "is unsupported by verification, affidavit or other proof under the court rules"; "Defendants make unverified assertions without complying with the court rules"; "[n]o verified allegation of proof of conduct has been presented to this court that Plaintiff is so charged with knowledge of the sale"; "Defendants have failed to comply with the court rules to submit affidavits in support of their motion for summary judgment. Defendants present to the court naked, unverified mat-

ter in their motion"; and "the motion contravenes the court rules by submitting undocumented material." Such complaints do not apprise the trial court that appellees had failed to certify copies of documents referred to in their affidavits. The complaint is waived.

In his fourth point of error, appellant complains that the trial court erred in granting appellees' motion to quash the taking of the oral deposition of Kathryn Dart.

The determination of whether a deposition should be taken is within the sound discretion of the trial court. *Durham v. Cannan Communications, Inc.*, 645 S.W.2d 845, 847 (Tex.App.—Amarillo 1982, writ dism'd); *Harris County v. Hunt*, 388 S.W.2d 459, 467 (Tex.Civ.App.—Houston 1965, no writ). The trial court has broad powers and discretion to control the time, place, and manner of taking depositions. *Meyer v. Tunks*, 360 S.W.2d 518, 522–23 (Tex.1962); *Durham v. Cannan Communications, Inc.*, 645 S.W.2d at 847; *Harris County v. Hunt*, 388 S.W.2d at 467.

Appellant has failed to demonstrate any abuse of discretion on the part of the trial judge. On September 15, 1986, appellant filed his motion to take the depositions of appellees which included a proposed order granting the motion. The proposed order is crossed out and the following has been handwritten below it:

> JUST PUT IN FILE—NOTHING TO BE HEARD—CAN TAKE DEPOSITIONS BY NOTICE

No indication of who wrote the note is on the motion or proposed order.

On September 24, 1986, appellant notified appellees that their depositions would be taken on October 8, 1986—Dart first and then Carper.[3] On September 30, 1986, appellees filed a motion to quash the taking of the deposition alleging that the notice came after the court-imposed deadline for

---

3. Carper's oral deposition had already been    completed as of May 9, 1986.

discovery of August 15, 1986,[4] and that all items requested for production had already been produced and examined by appellant's counsel.

The trial court granted appellees' motion to quash on October 21, 1986. The trial court did not state the basis for quashing the motion, but did permit appellant to submit one set of interrogatories, by October 21, 1986, to be answered by appellees within fifteen days of receipt.

Appellant submitted his interrogatories October 23, 1986, and made no complaint or objection to the trial court's ruling. It is within the trial court's discretion to accept or refuse late filed answers to interrogatories. *See Texas Employers' Insurance Association v. Bragg*, 670 S.W.2d 712, 715 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

Appellant has failed to meet his burden of showing the trial court abused its discretion. Point of error number four is overruled.

In his final point of error, appellant complains the trial court erred in granting appellees' special exceptions to appellant's second amended petition. Appellant claims error due to the fact that he had filed his third amended petition before the trial court ruled on the motion and that appellees failed to distinguish or rebut his law concerning "the equitable doctrine of a gift in praesenti."

Appellees' special exceptions complained that appellant's second amended petition was unclear concerning the capacity in which he sues defendants and that his pleadings appear to conflict as to whether real or personal property is the subject of the cause of action, whether the transaction occurred in 1965 or 1975, and whether he is suing on a contract or gift cause of action. Four days after appellees filed their special exceptions, appellant filed his third amended petition. Slightly over two weeks after the special exceptions were filed, the trial court tardily granted them and ordered appellant to clarify the nature of his cause of action and if his theory is a contract, to set out the terms of the agreement, the property alleged to be the basis of the contract, the parties to the agreement, and when and how the transfer of the property was to take effect.

The trial court has broad discretion in ruling on special exceptions to the pleadings and the court's ruling on the exceptions will not be reversed on appeal absent a showing of an abuse of discretion resulting in injury. *Rodriguez v. Yenawine*, 556 S.W.2d 410, 413 (Tex.Civ.App.—Austin 1977, no writ); *see Yeatman v. Nelms*, 345 S.W.2d 351, 352 (Tex.Civ.App.—Eastland 1961, no writ). When the trial court has sustained special exceptions to the pleadings, the pleader has the right to amend to meet the exceptions or refuse to amend and test the validity of the ruling on appeal. *Rodriguez v. Yenawine*, 556 S.W.2d at 413.

Appellant has failed to show how he was harmed by the trial court's action. Apparently, the trial court accepted his third amended petition. It does not appear from the record that appellant was precluded from pursuing any cause of action he believed to be tenable. We find the trial court did not abuse its discretion in granting appellees' special exceptions and in ordering appellant to replead his causes of action with clarity.

Appellant's fifth point of error is overruled.

Having overruled all of appellant's points of error, we now affirm the judgment of the trial court.

---

4. The motion states the deadline was made at the pre-trial conference held on June 2, 1986.