# DISSENTING OPINION

No. 04-11-00924-CV

**IN RE ESTATE OF WILLIAM H. MCNUTT**, Deceased

From the County Court, Kimble County, Texas
Trial Court No. 2,284
Honorable Joe Loving, Jr., Judge Presiding

Opinion by:    Catherine Stone, Chief Justice
Dissenting opinion by:  Sandee Bryan Marion, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  May 22, 2013

In this appeal all parties challenge the trial court's judgment in which the court found that the elements of an oral gift of land had been proven by appellant, Sherry D. McNutt, but it limited the gift to "a permanent residence structure existing on (5) five acres of land, with water."  On appeal, Sherry argues she proved the elements of an oral gift of land to the 2,000-acre "north side" of the almost 3,700-acre McNutt Ranch.  Appellees are the Estate of William H. McNutt, Deceased; McNutt Ranch, Ltd.; and McNutt Management, LLC, the General Partner of McNutt Ranch, Ltd. (collectively, "appellees").  In their cross-appeal, appellees assert the trial court erred in awarding Sherry an undefined five-acre parcel.

The majority reverses and remands in the interests of justice because the trial court rendered a judgment based on a legal theory not developed at trial.  However, this legal theory— that Sherry was entitled to the house and five acres—was not developed because Sherry argued she was entitled to the entire 2000-acre "north side" of the ranch, which includes the house and five acres.  Because I believe the evidence does not support a finding that any oral gift was made, I would affirm.

## BACKGROUND

William ("Bill") McNutt, who died during the pendency of the underlying lawsuit, owned a working ranch of almost 3,700 acres called the McNutt Ranch. The ranch is bisected by Interstate 10, and the parties referred to the acreage north of I-10 as the "north side" and the acreage to the south of I-10 as the "south side." Bill and his wife, Beth, have two daughters, Sherry McNutt and Dawn McNutt Keller. The following is Sherry's account of why she is entitled to the 2,000-acre "north side."

According to Sherry, in 1983, her father asked her to move to the ranch from Colorado where she was living. The ranch foreman had died and her parents were unable to manage the ranch on their own. Sherry testified that in exchange for moving back home to run the ranch, her father gave her the "north side." She resided on the "north side" in the house formerly lived in by the foreman. In addition to overseeing and personally taking part in regular ranching activities, Sherry booked hunts on both the "north side" and "south side" of the property. Her parents received payments from the hunters for use of the "south side" and Sherry received payments from the hunters for use of the "north side." In 2000, Bill gave to Beth and Sherry the "south side" hunting compensation, and, after a time, Sherry also shared the "north side" compensation with her mother. About five years later, a misunderstanding about the division of the hunting compensation caused a rift between Sherry and her father. This rift eventually led to Sherry filing this suit against her father (and later his estate). In her petition, Sherry alleged a cause of action for oral gift of land and she asked for a judgment "for title to the north side of the McNutt Ranch." In the course of the lawsuit, the parties negotiated a temporary injunction under which Sherry agreed to temporarily limit herself to the use of and access to the house in which

she had been living on the "north side" pending final resolution of the lawsuit. After a two-day bench trial, the trial court rendered the judgment that is the basis of this appeal.

## ORAL GIFT OF LAND

In her first issue, Sherry asserts the trial court correctly held that she proved an oral gift of land, but incorrectly limited the gift to only the house and five acres of the 2,000-acre "north side." In their cross-issue on appeal, appellees assert there is no evidence of an oral gift of the house and five acres to Sherry. I agree with the majority's conclusion that Sherry failed to meet her burden of proving an oral gift as to the 2,000 acres. Because I believe Sherry did not satisfy her burden at trial as to either the 2,000 acres or the house and five acres, I respectfully dissent. For the purpose of explaining why I dissent, following is a more detailed discussion of the evidence at trial.

At trial, the sole issue was whether Bill made an immediate present oral gift of the 2,000-acre "north side" to Sherry. Sherry did not allege, in the alternative, that her father made her a present oral gift of only the house and five acres. The trial court, prior to announcing its decision, acknowledged a five-acre gift was never raised or argued by any party. However, in its judgment, the trial court found as follows:

> The elements of an oral gift of land have been proved under the quantum of proof required under Texas law; provided however, the court finds that the parol or oral gift by [Bill to Sherry] was limited to a permanent residence structure existing on five (5) acres of land, with water. The five (5) acre tract includes access to the Highway I-10 service road.

A gift of real property may be made in two ways: either by deed or by oral gift. Generally, a conveyance of real property must "be in writing" and "subscribed and delivered by the conveyor" or his agent. TEX. PROP. CODE ANN. § 5.021 (West 2004) ("Instrument of Conveyance"); *see also* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4) (West 2009) ("Statute of Frauds"). To establish an oral gift of an interest in real property, a party must show: (1) a gift

in praesenti, that is, a present gift; (2) possession under the gift by the donee with the donor's consent; and (3) permanent and valuable improvements by the donee with the donor's consent or other facts demonstrating that the donee would be defrauded if the gift were not enforced. *Thompson v. Dart*, 746 S.W.2d 821, 825 (Tex. App.—San Antonio 1988, no writ). To be a gift in praesenti, the donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee. *Id.* Three elements are necessary to establish the existence of a gift: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Id.* Further, the owner must release all dominion and control over the property. *Id.* The person claiming the gift bears the burden of establishing these elements. *Id.* Therefore, the threshold issue Sherry had to establish was the existence of a gift. More specifically, she had to establish that Bill released all dominion and control over the 2,000-acre "north side."

On appeal, Sherry agrees with the ruling that she proved the elements of an oral gift but she disagrees with the subsequent qualification that the gift was limited to five acres. Therefore, she asks this court to reverse only the ruling as to the five acres, and affirm the ruling that she proved all the elements of an oral gift. Sherry correctly states in her brief that "the evidence regarding the oral gift of land—for and against—addressed the entire 2,000 acres, not just the residence and five acres." Therefore, Sherry interprets the judgment as partially granting her claim (as to the house and five acres) and partially denying her claim (as to the entire 2,000 acres). The appellees, on the other hand, argue this court may affirm or reverse only the court's award to Sherry of an oral gift of the house and five acres.

A judgment should be construed as a whole toward the end of harmonizing and giving effect to all the court has written. *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1977). In

this case, it is apparent the trial court found the evidence did not establish that Sherry satisfied the elements of an oral gift of the entire 2,000-arce "north side," but the evidence did establish the elements of an oral gift of the house and five acres.

When the party who had the burden of proof at trial complains of the legal insufficiency of an adverse finding, that party must demonstrate the evidence establishes conclusively (*i.e.*, as a matter of law) all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). A reviewing court must examine the record for evidence supporting the adverse finding, ignoring all evidence to the contrary. *Id.* If more than a scintilla of evidence supports the adverse finding, the issue is overruled. *Id.* If there is no evidence to support the adverse finding, the entire record must be examined to determine whether the contrary proposition is established as a matter of law. *Id.* The issue is sustained only if the contrary proposition is conclusively established. *Id.* The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When a party attacks the factual sufficiency of an adverse finding on an issue on which she had the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. A reviewing court considers all the evidence and will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under either standard of review, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *see also City of Keller*, 168 S.W.3d at 819.

Here, Sherry had the burden to establish all the elements necessary to show Bill made her a present oral gift of the 2,000-acre "north side." Therefore, as to her legal sufficiency challenge, Sherry must demonstrate the evidence establishes as a matter of law all vital facts in support of a finding that Bill made her a present oral gift of the "north side." However, if more than a scintilla of evidence supports the implied adverse finding—that Bill did not make her a present oral gift of the "north side"—Sherry's legal sufficiency challenge must be overruled. As to her factual sufficiency challenge, Sherry must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence.

In their cross-issue, appellees assert there is no evidence of an oral gift of the house and five acres to Sherry. I agree with appellees. When reviewing a legal sufficiency or "no evidence" challenge, a reviewing court must determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827; *Rosas v. Comm'n for Lawyers Discipline*, 335 S.W.3d 311, 316 (Tex. App.—San Antonio 2010, no pet.). Because appellees challenge the legal sufficiency of the evidence to support a finding on which they did not have the burden of proof at trial, they must demonstrate on appeal that no evidence exists to support the adverse finding. *Rosas*, 335 S.W.3d at 316. A legal sufficiency or "no evidence" challenge is sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.*

**B.     The "North Side"**

On appeal, Sherry asserts the evidence establishes the conveyance of the 2,000 acres as a matter of law. Alternatively, she asserts the judgment of five acres is so against the great weight and preponderance of the evidence that it is manifestly unjust and "a new trial is necessary to solve the problems posed by this surprise judgment." According to Sherry, the evidence that established the elements of an oral gift of five acres also proved the elements of an oral gift of the 2,000 acres of which the five acres is a part. Sherry's case rested on her testimony, the testimony of seven witnesses (live and by affidavit), and two exhibits listing improvements made by Sherry to the "north side" and the "south side" of the ranch.

Sherry testified her father made a present oral gift of the "north side" to her in 1983 when he called and asked her to return to the ranch to help run the ranch. Sherry said she returned to the ranch in 1983, took over the foreman duties, and continued to reside on the "north side" for the next thirty-plus years. Sherry testified she worked both sides of the ranch without compensation until about 1989 when she began to receive compensation for her work on the "south side." She thought she received about $1,200 net per month until about 2000. The ranch had a gaming operation, with Sherry receiving lease payments for hunting on the "north side" and her parents receiving lease payments for hunting on the "south side." Her compensation stopped in 2000 when Bill gave Sherry and her mother the lease payments for the "south side."

Sherry produced two exhibits, each showing a list of improvements, one entitled "Permanent Improvements Made On The Sherry McNutt Ranch By Sherry McNutt" and the other entitled "Ranch Work, Jobs, And Permanent Improvements Performed On The Bill McNutt Ranch By Sherry McNutt." She said improvements were paid for by her father, her mother, or herself. However, she could not provide proof of the amount of money she spent on the

improvements as compared to the amount paid by her parents. Sherry testified her father's accountant told her she did not need to keep receipts. Sherry also produced seven witnesses, all of whom had known the McNutt family for many years and often visited the ranch. Each witness testified that Bill often referred to the "north side" as "Sherry's side" or as "Sherry's." One of the witnesses testified Bill said the "north side" was Sherry's and that Sherry and Dawn would have to "fight" over the "south side." Another witness said Bill told him he wanted Sherry to hurry and finish some work on the "south side," but as to "her side," he did not care what she did, she could sell it or divide it up. These same witnesses testified they knew Sherry worked both sides of the ranch and made many improvements to the ranch.

Sherry's evidence establishes she took possession of the "north side" and made improvements to both sides of the ranch. But, the mere taking of possession or making improvements of insignificant value is not sufficient to establish a present oral gift of land. *See Wooldridge v. Hancock*, 70 Tex. 18, 6 S.W. 818, 822 (1888). Without extrinsic evidence of the necessary elements, "the proof establishing the donor's intent to give would, to a certain extent, be rendered solely on parol evidence." *Hernandez v. Alta Verde Indus., Inc.*, 666 S.W.2d 499, 504 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). As stated above, one of the elements on which Sherry bore the burden of proof was that Bill released all control and dominion over the "north side." In determining whether Sherry's possession of the "north side" satisfied this required element, "we consider only the circumstances relative to [her] possession which evidence a surrender of ownership and control by [her] parents." *Sharp v. Stacy*, 535 S.W.2d 345, 350 (Tex. 1976). "Circumstances that may be explained quite separate and apart from a surrender of ownership and control by [Sherry's] parents will not be considered." *Id.*

In addition to the above evidence adduced by Sherry, appellees presented the testimony of three witnesses, James David Boland, Martin Keller, and Kasey Keller, as well as several exhibits. Boland testified Bill hired him in January 1987, and he worked for Bill as his CPA until Bill's death. According to Boland, Bill's tax returns took into account improvements made on the "north side" and the "south side," but no distinction was ever made between the two "sides." Bill submitted copies of checks to Boland that indicated the purpose of the check. For example, a check with the notation "Sherry McNutt, exotic game" indicated Bill reimbursed Sherry for the purchase of exotic game for the ranch's hunting operation. Bill and Beth ran their cattle on both the "north side" and the "south side." Bill paid all property taxes for each year on the ranch. Finally, no gift tax return reflecting an oral gift from Bill to Sherry was ever filed.

From 1990 through 2000, Bill paid Sherry a total net payroll amount of $142,957.80. From 1989 through 2004, Bill paid Sherry's medical and auto insurance, gifts, labor, and miscellaneous items totaling $197,272.23. From 1989 through 2004, Bill reimbursed Sherry $576,404.74 for third-party day labor, exotic animals, trailer, hunting, and other expenses. All ranch expenses, including these expenses, were reported on Bill's tax returns. The expenses were not broken down into "north side" and "south side." Through 2000, most expenses reimbursed to Sherry did not include receipts. In 2000, Boland explained to Bill and his wife the need to substantiate expenses taken as tax deductions. Boland thought Bill started to refuse Sherry's request for reimbursement in 2000 because the expenses started to decrease at about that time. Boland said that on the checks Bill would refer to the house in which Sherry lived sometimes as the "tenant house" and sometimes as "Sherry's house."

Although Bill gave the "south side" hunting compensation to his wife and Sherry in 2000, he remained active in negotiating the leases. Sherry admitted that along with herself and

her mother, her father sought out lessees, he negotiated the hunting leases for both sides of the ranch, and he set the terms and prices for hunting on both sides of the ranch. In 2005, a $5,000 check resulting from a lease was made payable to both Sherry and Bill. Sherry considered the check as belonging to her and her mother; therefore, she endorsed the check with her name and her father's. She admitted she did not have Bill's permission to sign his name. Later, when Bill discovered this, Sherry paid him $27,000 "to make peace with the family." She said the family "turned on" her and ordered her off the ranch.

On October 18, 2005, Bill's lawyer wrote a letter to Sherry advising her of certain "rules." The letter informed Sherry that Bill would have her evicted if she did not adhere to the following:

1. No guests on the ranch, except at her house.
2. No hunters allowed on the ranch by her invitation or by payment to her.
3. She was not to participate in the ranch management in any manner, either with regards to hunting or operations.
4. She was not to interfere with anyone who may be hired to perform certain jobs on the ranch including but not limited to the trapping or sale of domestic or exotic animals.
5. She was to stay in the area of her home or her mother's home for visits to her mother.

In either November or December 2007, for estate tax purposes, Bill transferred the entire 3,707 acres of the ranch to McNutt Ranch Ltd, except for Bill's house and approximately five acres with access to Interstate 10. Bill owned ninety-nine percent of McNutt Ranch Ltd. and the remaining one percent is owned by McNutt Ranch LLC, which is the general partner of McNutt Ranch Ltd. McNutt Ranch LLC is owned by Dawn McNutt Keller and her two children, Martin and Kasey Keller. Although Sherry filed her lawsuit in October 2007, Boland said the planning for the transfer of the ranch to McNutt Ranch Ltd. began at least as early as the Summer of 2007. Boland testified that Bill and his wife wanted the ranch to exist through the lifetimes of their

grandchildren, Martin and Kasey. To that end, in Bill's Will the ranch was initially left in a trust for Sherry and Dawn, with the ranch eventually residing in the hands of Martin and Kelsey, who would have ultimate disposition of the ranch in their lifetime. However, in 2005, Bill changed his Will because he did not want Sherry to have any part of the ranch; he wanted the ranch left in trust for Dawn and subsequently her two children.

After reviewing the record, I believe Sherry did not establish as a matter of law that Bill gave Sherry a present oral gift of the 2000-acre "north side." I also believe the implied adverse finding (that Bill did not make such a gift) is supported by legally sufficient evidence, and this adverse finding is not against the great weight and preponderance of the evidence. Any "substantial and permanent improvements that [Sherry] made or arranged for upon the land might be considered referable to [Sherry's] status as owner, except that many if not most of the improvements were paid for by [her] parents." *See Sharp*, 535 S.W.2d at 351. "The making of improvements by a transferee does not evidence a surrender of ownership and control if the transferor is also making improvements or paying for them." *Id.* Neither does the fact that Sherry received payments for leasing the "north side" to hunters "exclusively evidence a surrender of ownership and control because [her] parents continued to" use the "north side" for their own purposes. *Id.* "Finally, testimony that the ["north side"] was referred to as '[Sherry's]' . . . did not constitute any evidence that [Sherry] occupied the ["north side'] as owner." *Id.* "This is exactly the type of evidence that *Hooks v. Bridgewater* meant to exclude from consideration. The 'reason for the requirement of possession is that without it the existence of the contract rests altogether in parol evidence, which common experience has shown to be too unstable and uncertain to be permitted to work a divestiture of title to real property.'" *Id.* (quoting *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1117 (1921)).

**C.      The House and Five Acres**

In addition to the above evidence that Sherry lived in and made improvements to the house on the "north side," the record contains the letter written by Bill's lawyer to Sherry setting out the "rules." The letter refers to the house in which Sherry lived on the "north side" as "your home." However, the letter ends with the following statement: "If the foregoing rules are not adhered to, copiously by you, your father will have no choice but to have you evicted from the ranch." Bill's intent to have Sherry evicted if she did not follow his rules is contrary to any conclusion that he relinquished dominion and control over the house. As to the five acres, the trial court relied on evidence that when Bill conveyed the ranch to the partnership, he excepted the surrounding 5.78 acres on which his own house sat. Nothing in the record indicates Bill made a similar present oral gift of any acreage surrounding the house on the "north side." I believe the evidence is legally insufficient to support the trial court's award to Sherry of "a permanent residence structure existing on (5) five acres of land, with water."

**CONCLUSION**

I agree with the majority that there is no evidence to support an oral gift by Bill to Sherry of the 2,000-acre "north side." Similarly, I believe that the evidence is also legally insufficient to support the trial court's finding of an oral gift by Bill to Sherry of the house and five acres. Therefore, I would reverse the trial court's judgment in favor of Sherry and render a take-nothing judgment in favor of appellees.


                                                                Sandee Bryan Marion, Justice